(No. 84162.—

JACK E. RUSSELL, Appellee, v. THE DEPARTMENT OF NATURAL RESOURCES *et al.*, Appellants.

*Opinion filed October 1, 1998.*

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Paul Racette, Assistant Attorney General, of Chicago, of counsel), for appellants.

Steven B. Morgan, of Perbix & Morgan, of Havana, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Section 3.36(a) of the Wildlife Code (Code) provides that a license or permit issued under the Code may be revoked for up to five years if the person holding it is found guilty of any Code violation. 520 ILCS 5/3.36(a) (West 1994). We hold that this provision is not unconstitutionally vague.

## BACKGROUND

In 1992, Jack E. Russell pleaded guilty to four violations of the Code. These violations included hunting turkeys by the use of bait, hunting turkeys without a permit, hunting turkeys out of season, and hunting turkeys before hunting hours. Later, in October of 1994, Russell pleaded guilty to another Code violation, hunting deer by the use of bait, which is a Class B misdemeanor. 520 ILCS 5/2.26 (West 1994).

On March 29, 1995, the Department of Conservation (Department) filed an administrative complaint seeking the revocation and suspension of Russell's hunting licenses and permits for a period not to exceed five years. The complaint was based on Russell's violation of hunting deer with bait. The complaint notified Russell that his privilege to hunt in Illinois had been suspended pending a final administrative order pursuant to Department rule (17 Ill. Adm. Code § 2530.320(c) (1996)). Russell requested an administrative hearing on the complaint. (As of July 1, 1995, the Department of Conservation was merged into the Department of Natural Resources.)

A hearing officer for the Department conducted the administrative hearing on August 23, 1995. The attorney for the Department presented evidence of Russell's guilty plea to the offense on which the Department's claim was based. She then presented evidence of Russell's four previous conservation offenses. She requested that Russell's hunting privileges be revoked and suspended for five years.

Russell called as his first witness Thomas Wakolbinger, deputy chief of the Department's law enforcement division. Wakolbinger testified in general terms about the procedures for revoking and suspending hunting licenses. Typically, a conservation police officer in the field initiates the request for license revocation and suspension. Three layers of supervisors then review the officer's request before the filing of an administrative complaint. Wakolbinger estimated that out of the 20,000 conservation citations issued each year, 300 to 500 result in the filing of an administrative complaint for license revocation and suspension. The Department uses license revocation and suspension for serious violations and for repeat violators.

Russell testified on his own behalf that he would not have pleaded guilty to hunting deer with bait in October 1994 had he known that his hunting license could be revoked and suspended as a result. Although Russell was in an area baited with corn and a salt block, he did not know that corn was illegal bait or that the salt block was there. Russell had permits to kill five deer, but had harvested only one. Russell claimed that the officer who had issued his citation for hunting deer with bait was angry with him. The same officer had issued Russell a citation in April 1994, for which Russell was found not guilty after a trial. Directly after that trial, the officer threatened to hang Russell and had to be physically restrained by other individuals. Later, the same officer threatened to kill Russell's dog. Russell also described at length the various forms of assistance that he had provided to the Department in the past. Russell's wife testified, and she corroborated Russell's testimony in certain respects.

Following the hearing, the hearing officer entered a written order in which he refused to dismiss the Department's complaint based on Russell's assertions that sec-

tion 3.36(a) of the Code is unconstitutional. The hearing officer also issued a written report and recommended that any hunting licenses, stamps or permits issued to Russell be revoked and that his hunting privileges be suspended for a period of three years effective March 30, 1995. On September 22, 1995, Brent Manning, Director of Natural Resources, issued a final administrative order in which he adopted the hearing officer's recommendations in their entirety.

Russell sought judicial review of the Department's decision by filing a complaint for administrative review in the circuit court of Mason County on October 13, 1995. The Department moved to dismiss the complaint, arguing that administrative review was not available. Russell then filed a motion seeking leave to file a petition for a common law writ of *certiorari*. Russell attached to the motion his petition for writ of *certiorari*, which contained allegations similar to those in his complaint for administrative review. The circuit court granted both the Department's motion to dismiss the complaint for administrative review and Russell's motion for leave to file the petition for writ of *certiorari*. The circuit court also granted the Department's oral motion for a change of venue and transferred the cause to the circuit court of Sangamon County.

Russell, in support of his petition for writ of *certiorari*, filed a memorandum of law in which he challenged the constitutionality of section 3.36(a) of the Code on several grounds. Russell asserted that section 3.36(a) is unconstitutionally vague in violation of his right to due process of law. Russell also asserted, *inter alia*, that section 3.36(a) violated his rights to substantive due process and equal protection.

After hearing oral argument, the circuit court entered an order declaring section 3.36(a) unconstitutional. The court concluded that section 3.36(a) violated Russell's

constitutional right to due process of law because it is impermissibly vague. According to the court, section 3.36(a) resulted in arbitrary and discriminatory enforcement of Russell because it does not contain any standards as to who may face revocation and suspension and for what length of time. The circuit court ordered that Russell be issued his permit or license. The Department filed a motion to reconsider, which the circuit court denied.

The Department and its director appeal directly to this court pursuant to Supreme Court Rule 302(a)(1) (134 Ill. 2d R. 302(a)(1)).

## ANALYSIS

As an initial matter, we address, *sua sponte*, whether the circuit court had jurisdiction. See *People v. Bounds*, 182 Ill. 2d 1, 3 (1998). Russell first sought judicial review of the Department's decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). The circuit court properly dismissed this complaint. In *Wilkins v. State of Illinois Department of Public Aid*, 51 Ill. 2d 88, 90 (1972), this court held that "the Administrative Review Act is applicable only in those instances where it has been adopted by express reference by the act creating or conferring jurisdiction upon the administrative agency involved." Neither the Wildlife Code (520 ILCS 5/1.1 *et seq.* (West 1994)) nor the Department's enabling statute (20 ILCS 805/63a *et seq.* (West 1994)) adopts the Administrative Review Law as an available means of judicial review. Consequently, administrative review was not available to Russell.

Russell also sought judicial review by requesting leave to file his petition for a common law writ of *certiorari*. The circuit court granted Russell's request. This action by the circuit court was proper as well. Where, as here, the statute conferring power on an administrative agency does not expressly adopt the Administrative Review Law

and provides for no other form of review, the common law writ of *certiorari* may be utilized to obtain circuit court review of administrative proceedings. See *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996); *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427 (1990); *Smith v. Department of Public Aid*, 67 Ill. 2d 529, 540-41 (1977). The circuit court therefore had jurisdiction to consider Russell's petition for writ of *certiorari*.

We now turn to the merits of this appeal. This court reviews *de novo* a circuit court's holding with respect to the constitutionality of a statute. See *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 420 (1996). All statutes carry a strong presumption of constitutionality. See *People v. Blackorby*, 146 Ill. 2d 307, 318 (1992). The party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation. See *Blackorby*, 146 Ill. 2d at 318. Here, that party is Russell.

Section 3.36(a) of the Wildlife Code states in pertinent part:

> "Whenever a license or permit is issued to any person under this Act, and the holder thereof is found guilty *** of a violation of any of the provisions of this Act, *** his license or permit may be revoked by the Department, and the Department may refuse to issue any permit or license to such person and may suspend the person from engaging in the activity requiring the permit or license for a period of time not to exceed 5 years following such revocation.
>
> Department revocation procedures shall be established by Administrative rule." 520 ILCS 5/3.36(a) (West 1994).

Russell contends that section 3.36(a) is unconstitutionally vague in violation of his right to due process of law. Russell argues that section 3.36(a) results in arbitrary and discriminatory enforcement because it provides no standards as to who may face revocation and suspension and for what length of time. According to Russell, the Department should adopt a point system for

determining whose hunting privileges to suspend and for how long.

The constitutional principle of due process of law requires that a statute "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298 (1972). In addition, a statute must provide explicit standards for those police officers, judges, and juries who apply them, in order to prevent arbitrary and discriminatory enforcement. *Grayned*, 408 U.S. at 108-09, 33 L. Ed. 2d at 227-28, 92 S. Ct. at 2299; see also *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 425 (1997); *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 537 (1996).

We first determine whether Russell is challenging the statute as being unconstitutional on its face or only as applied to him. The rule is well established that " '[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' " *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7, 71 L. Ed. 2d 362, 369 n.7, 102 S. Ct. 1186, 1191 n.7 (1982), quoting *United States v. Mazurie*, 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714 (1975); see *People v. Jihan*, 127 Ill. 2d 379, 385 (1989). The Department asserts that section 3.36(a) does not purport to regulate any first amendment activity, and Russell does not dispute this claim. Given that no first amendment concern is implicated here, Russell does not have the right to challenge the statute as being vague on its face if it clearly applies to his own conduct. See *Jihan*, 127 Ill. 2d at 386. Thus, the issue before us is whether section 3.36(a) is unconstitutionally vague as applied to Russell's own conduct in this case.

Preliminarily, we note that the Department characterizes section 3.36(a) as civil, as opposed to criminal, in nature. Russell does not contest this characterization. The Supreme Court has stated that it tolerates less precision in enactments with civil rather than criminal penalties "because the consequences of imprecision are qualitatively less severe." *Flipside, Hoffman Estates, Inc.*, 455 U.S. at 498-99, 71 L. Ed. 2d at 372, 102 S. Ct. at 1193. Accordingly, because section 3.36(a) imposes only civil penalties, less precision in its language may be tolerated.

In applying the established principles earlier set forth, it is readily apparent that section 3.36(a) of the Code is not unconstitutionally vague as applied to Russell. The language of section 3.36(a) is sufficiently clear to provide a person of ordinary intelligence with fair notice that, if found guilty of a Code violation, the Department may revoke and suspend that person's hunting privileges for up to five years. Here, Russell pleaded guilty to the Code violation of hunting deer with bait. Section 3.36(a) gave Russell fair and clear warning that one possible consequence of his being found guilty of this Code violation was the revocation and suspension of his hunting privileges for up to five years.

In addition, section 3.36(a) provides sufficient standards to guide the Department and to prevent its arbitrary and discriminatory application. Russell contends that section 3.36(a) results in arbitrary and discriminatory enforcement because it provides no standards as to who may face revocation and suspension and for what length of time. This argument is erroneous. First, the Department does not possess the discretion to revoke and suspend the hunting privileges of any person on a whim. To the contrary, the Department can only revoke and suspend such privileges after a particular hunter is found guilty of a violation of the Code or its ac-

companying regulations. Nor does the Department possess limitless discretion to determine the length of time that hunting privileges can be suspended in a particular case. Rather, the legislature has explicitly mandated that suspensions cannot exceed five years. The Department followed these standards in applying section 3.36(a) to Russell. Russell pleaded guilty to a Code violation, hunting deer with bait. He then fell within the class of persons subject to the possible revocation and suspension of hunting privileges. Moreover, the Department suspended Russell's hunting privileges for three years. The Department thus complied with the legislature's mandate that suspensions not exceed five years.

We note, furthermore, that the Department has adopted additional standards in its administrative regulations to guide the hearing officer and its director in determining whether revocation and suspension of hunting privileges are appropriate measures in a particular case and, if so, for what length of time. Section 2530.420(f)(2) of the Illinois Administrative Code specifically directs the hearing officer to consider the following matters in contested cases in which the Department is seeking to revoke or suspend a license or permit: the respondent's history of past conservation offenses; whether the respondent's course of conduct threatened the biological balance of any protected species; whether the respondent's conduct threatened the safety of any person; any evidence that the respondent was ignorant of a material fact which led to the unlawful conduct; the degree of cooperation the respondent exhibited with Department officials; the degree to which the respondent profited economically from the unlawful conduct; and, finally, any other evidence offered and noted by the hearing officer as demonstrating factors in mitigation or aggravation. 17 Ill. Adm. Code § 2530.420(f)(2) (1996).

The record shows that the Department considered

these guidelines before it revoked and suspended Russell's hunting privileges for three years. At the administrative hearing, the attorney for the Department presented evidence of Russell's four prior conservation offenses for improperly hunting turkey. She argued that Russell's history of prior offenses warranted a full five-year suspension. Russell, on the other hand, argued the presence of factors in his favor and asked to retain his hunting privileges. Russell contended that his violation for hunting deer with bait had not threatened the biological balance of that species. He asked the hearing officer to note that a "deer management problem" existed at the time, and that he had been authorized by permit to kill five deer but had harvested only one. Russell also claimed ignorance of certain facts material to his offense; namely, that corn was illegal bait and that the salt block was present. Russell then described at length the various forms of assistance that he had provided to the Department in the past. Lastly, Russell asked the hearing officer to consider as a factor in mitigation the "personality conflict" between Russell and the officer who had issued his citation for hunting deer with bait. After considering all the evidence, the hearing officer recommended that Russell's hunting privileges be revoked and suspended for three years. The Director adopted this recommendation.

The Department's utilization of the standards set forth in section 2530.420(f)(2) persuades us that the Department did not act in an arbitrary and discriminatory manner when it revoked and suspended Russell's hunting privileges for three years. According to the Department's deputy chief of law enforcement, who testified at the hearing, the Department's policy was to use license revocation and suspension for serious violations and for repeat violators. The standards in section 2530.420(f)(2) appear to implement that policy. Russell

had been convicted of five conservation offenses in little more than two years. Russell's status as a repeat violator of the Code caused the Department to conclude that license revocation and suspension were appropriate measures. We see nothing improper in this exercise of discretion by the Department.

In conclusion, section 3.36(a) is not unconstitutionally vague as applied to Russell. Section 3.36(a) gave Russell fair and clear warning that one possible consequence of his being found guilty of a Code violation was the revocation and suspension of his hunting privileges for up to five years. In addition, section 3.36(a) contains sufficient standards to guide the Department and to prevent its arbitrary and discriminatory application. The additional guidelines provided by the Department itself acted as a secondary safeguard and ensured that the Department did not apply section 3.36(a) to Russell in an arbitrary and discriminatory manner. Having concluded that section 3.36(a) is not unconstitutionally vague as applied to Russell, we need not address his argument that the Department should adopt a point system for determining whose licenses to suspend and for how long.

Russell makes two additional arguments in support of the circuit court's judgment. He contends that section 3.36(a) violates his rights to substantive due process and to equal protection.

Russell asserts that section 3.36(a) violates substantive due process because it is not rationally related to a legitimate state purpose. Russell concedes that conservation of wildlife is a legitimate state purpose. He nonetheless maintains that section 3.36(a)'s system of license revocation and suspension is not a reasonable method of accomplishing this purpose.

Where, as here, no fundamental constitutional right is implicated, this court reviews the statute under consideration using the rational basis test. See *People v.*

*Lindner*, 127 Ill. 2d 174, 179 (1989). Under this test, the statute must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective. See *Lindner*, 127 Ill. 2d at 180.

Section 3.36(a) meets this test. Section 3.36(a) provides that if a person is found guilty of a violation of the Wildlife Code, then the Department may revoke and suspend that person's hunting privileges for up to five years. The public interest that it intends to protect is the conservation of wildlife. Section 3.36(a) bears a reasonable relationship to this interest, and the method it uses to further this interest is reasonable. Revoking and suspending the hunting privileges of those persons who violate the Wildlife Code can protect wildlife. Consequently, we reject Russell's substantive due process claim.

Russell lastly contends that section 3.36(a) violates his right to equal protection because there is no rational basis for the disparate treatment of license holders. Russell and the Department agree that this claim should be evaluated using the rational basis test.

Under this rational basis test, "judicial review of legislative classifications is limited and generally deferential; the court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal." *In re A.A.*, 181 Ill. 2d 32, 38 (1998). The classification must be upheld if any set of facts can reasonably be conceived to justify it. See *In re A.A.*, 181 Ill. 2d at 38.

Section 3.36(a) meets this rational basis test as well. Section 3.36(a) distinguishes between those persons who have violated the Wildlife Code and those who have not, and subjects the former class of persons to possible license revocation and suspension. This is a reasonable means with which to achieve wildlife conservation. Therefore, Russell's equal protection challenge fails.

448

## CONCLUSION

Section 3.36(a) survives all of Russell's constitutional challenges. We therefore reverse the circuit court's order declaring section 3.36(a) to be unconstitutionally vague. We also reverse the circuit court's order directing the Department to issue Russell his permit or license.

*Circuit court judgment reversed.*