Docket Nos. 87147, 87148, 87149, 87150 cons.–Agenda 12–

November 1999.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DANIEL J. CONLAN.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICK C. SCOTT.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEPHEN M. MAIERS.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT T. WITTMAN.

Opinion filed February 17, 2000.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

At issue in these consolidated cases is the constitutionality of section 15–111 of the Illinois Vehicle Code (Code) (625 ILCS 5/15–111 (West 1998)), a statute regulating weights and loads of vehicles operating upon Illinois highways. The six cases in question come before this court from the circuit court of Jo Daviess County where an associate circuit judge dismissed them, holding that section 15–111 of the Code violates due process and is void for vagueness. The State appeals pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603). We reverse and remand.

 The events which culminated in the court’s rulings began on October 2, 1997, when defendant Robert Wittman was issued a traffic ticket in Jo Daviess County, Illinois, for allegedly operating a truck with a gross weight 6,320 pounds in excess of the maximum weight allowed by section 15–111 of the Code. The charge against defendant was dismissed after a bench trial conducted on May 12, 1998, the trial court finding that the statute was void for vagueness and violated fundamental guarantees of due process. As noted by both the circuit court and the State, that decision was not appealed and is not before this court for review. However, the circuit court chose to make the transcript of that abbreviated bench trial a part of subsequent rulings in other cases and, in that sense alone, it is a part of the record in the cases now before us.

Defendant Wittman, driving the same truck, was thereafter ticketed for violations of section 15–111(f) of the Code on October 9, 1997, December 12, 1997, and November 19, 1998. On those dates, his truck was alleged to have been overweight by 4,780 pounds, 4,240 pounds and 8,050 pounds, respectively. Those three cases come before us as case No. 87150.

Defendant Daniel J. Conlan was ticketed for a violation of section 15–111(f) while driving the aforementioned truck on January 1, 1998. The truck was allegedly 5,380 pounds in excess of legal limits. That case comes before us as case No. 87147.

Defendant Stephen M. Maiers was driving the truck in question on March 29, 1998, when he was charged with operating the vehicle at a weight 3,500 pounds in excess of the maximum weight allowed by section 15–111(f). That case comes before this court as case No. 87149.

Finally, defendant Rick C. Scott was charged on May 19, 1998, for operation of a 
different 
truck which was 11,560 pounds in excess of the weight limitation set forth in section 15–111(f). That case is before us as case No. 87148.

 Docket entries indicate that the first two cases involving defendant Wittman, and the cases against defendants Conlan and Maiers, were set for “further proceedings” on May 29, 1998. According to a summary order entered that date, the circuit court granted each defendant’s oral motion to dismiss, based upon the court’s prior ruling in the original Wittman case.

 The State filed motions to reconsider findings that the statute is unconstitutional and dismissal of the respective charges. In the meantime, defendant Scott had filed a motion to dismiss his charge. Those matters were still pending on January 6, 1999, when defendant Wittman’s final case came before the court for a bench trial.

At that trial, Trooper Michael Lowary testified that he and two Department of Transportation employees were operating portable scales in Jo Daviess County on November 19, 1998, when he observed a vehicle which had a significant bulge of its tires and appeared to be overweight. The five-axle, tanker truck, operated by defendant Wittman, was stopped and weighed on the portable scales. Individual axles were weighed and the results were added together to determine the gross weight of the loaded vehicle. The gross weight, which included the vehicle, the driver and the load being hauled, was found to be 67,550 pounds. Although Lowary’s testimony is somewhat difficult to follow in places, because he referred to a diagram which was not made a part of the record on appeal, it appears that he then measured the distance between extreme axles (front and rear) of the vehicle. That distance measured 25 feet, 9 inches in length, which Lowary rounded to the nearest foot (thus 26 feet) pursuant to the directive of the statute. Apparently, Lowary also measured the distance between certain inner axles to determine if an excessive load was being carried over and between those axles, 
i.e.
, an inner bridge violation. Lowary testified there was no violation of individual axle load limitations and no “inner bridge violation”; however, he calculated the gross weight of the vehicle, with its load, to be 8,050 pounds in excess of the legal limit as set forth in a table in section 15–111(f) of the Code. According to Lowary, the applicable table provides that a vehicle 26 feet in length, with four axles, can have a maximum gross weight of 59,500 pounds. He stated, “Illinois by law does not permit the tabulation of five axles on *** single vehicles.” He testified, in the case of a single vehicle, as opposed to vehicles operated in combination, the maximum gross weight limit is calculated on the basis of a four-axle vehicle, irrespective of any additional axles on the vehicle. After Lowary’s testimony, the court adjourned until January 14, 1999.

When court resumed, defendant Wittman, who represented himself throughout the trial, testified in his own behalf to his efforts to comply with the law and his belief that his “turnable axles,” representing the “newest technology,” do less damage to the road than older axles. Under cross-examination, defendant admitted that he was driving a “straight” truck, not a combination, that his vehicle was 26 feet long and weighed 67,550 pounds, and that his vehicle was overweight, although he disputed the extent to which that was true. He noted that his individual axles were all under allowable limits and maintained that he was not damaging the highway. At the conclusion of defendant’s testimony, the court took the matter under advisement.

On January 27, 1999, the circuit court entered an order denying the State’s motion to reconsider disposition of the four cases previously dismissed and dismissing defendant Wittman’s remaining case and that of defendant Scott. The court held section 15–111 of the Code constitutionally “infirm in 
all 
of its applications,” violative of due process and “void for vagueness.” The court found “several significant and substantial problems immediately apparent.” We quote from the court’s order:

“There is the sheer volume of it. The section under scrutiny consists of three pages, double columns of small print in the official State Bar Association volume. *** There is not a consistent tone or theme from beginning to end. There is not a consistent use of defined terms. There is use of a variety of terms without definition, most of which are terms beyond ordinary understanding (
e.g.
 ‘wheel loads’, ‘axle loads’, and ‘allowable loads’). There is reference to at least one algebraic formula, and there are two ‘tabular form’ charts purporting to specify weight limitations under certain circumstances. The text is replete with exceptions and ‘provided thats’ ***.”

It was the opinion of the circuit court that the statute did not provide fair warning of the conduct prohibited. The judge was also troubled by the different ways in which an offending vehicle could violate the statute, which he apparently felt accorded the police undue discretion in charging an offense. The circuit court found the “bridge method” a “particular mystery,” and was uncertain whether calculation of a vehicle’s “gross weight” included the driver and any other occupants of the cab of the vehicle. The court concluded that the statute “cannot be clearly understood by persons of ordinary intelligence,” and it was thus unconstitutional.

The State filed timely notice of appeal in each case, and we consolidated the cases for review pursuant to the State’s motion. The State has filed a brief; defendants neither have entered appearances nor have they filed briefs. We review 
de novo
 a circuit court’s holding with respect to the constitutionality of a statute. 
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998).

At the outset, we wish to emphasize, as we recently did in 
People v. Every
, 184 Ill. 2d 281, 285 (1998), that statutes enjoy a presumption of constitutionality. While that certainly does not mean they are unassailable, neither should circuit courts lightly or cavalierly declare unconstitutional that which the representatives of the people have seen fit to enact.

In order to satisfy constitutional principles of due process, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly, and provide explicit standards for those police officers, judges and juries who apply it in order to prevent arbitrary and discriminating enforcement. 
Grayned v. City of Rockford
, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972); 
Russell
, 183 Ill. 2d at 442. Where, as here, no first amendment concern is implicated, there is no right to challenge the statute as being vague on its face if it clearly applies to defendants’ conduct. 
Russell
, 183 Ill. 2d at 442. Thus, the issue is whether section 15–110 of the Code is unconstitutionally vague as applied to the conduct for which
 these
 defendants were prosecuted. See 
People v. Jihan
, 127 Ill. 2d 379, 385 (1989); 
Russell
, 183 Ill. 2d at 442. We hold that it is not.

The circuit court first complained that the “sheer volume” of the statute was one of the factors which rendered it unconstitutionally vague. The court also believed it contained too many exceptions and “provided thats.” We are aware of no case authority which would authorize invalidation of a statute on those bases. Many statutes and regulations are necessarily lengthy and replete with exceptions and conditions because they address diverse matters of considerable complexity. We live in a complex society. That reality is reflected in the history of the very statute in question, which has undergone substantial change since this court held application of a prior, simpler version constitutional in 1967 (see 
People v. Hinchey
, 37 Ill. 2d 410, 415 (1967); Ill. Rev. Stat. 1965, ch. 95½, par. 228), a decision to which the instant judge also took exception. The “sheer volume” of the statute may indeed make it tedious to read, and exceptions therein may render it more laborious to follow, but it is not our role to rewrite the statute according to our preferences. The issue before us is whether the statute is comprehensible such that it provides fair notice of what is prohibited. Having thoroughly perused the statute, we find that it is, and it does.

The circuit court next found objectionable what it perceived as a lack of consistent “tone” or “theme” in the statute. Although the circuit court’s concern with the statute’s tone is certainly a novel legal notion, we believe such an observation would be better relegated to the realm of literary criticism, as it has no place in this context. As for the theme of the statute, we believe a person of ordinary intelligence would readily recognize that it regulates “wheel and axle loads and gross weights.” One simply has to read the seven-word section title.

The circuit court also professed its belief that the statute lacks “a consistent use of defined terms” and uses “a variety of terms without definition, most of which are terms beyond ordinary understanding.” Our review of the statute does not reveal inconsistent terminology or terms which are without definition or the meaning of which cannot be discerned from their context.

 We believe anyone who attempts in earnest to understand the statute can fully comprehend its terms and, more importantly, understand what is prohibited. Tables set forth in the statute summarize and simplify certain matters addressed in text, providing a ready guide for application in specific situations. We see these tables as a significant aid in understanding what the statute prohibits, not a hindrance to comprehension, as the circuit court suggests. The algebraic formula set forth in the statute, apparently the “bridge” formula which the circuit court found confusing and ill-defined, is actually expressed in tabular form in subsection (f) of the statute to accommodate those who are not mathematically inclined. Of the terms which the circuit court highlighted in its order as problematic,“axle load” is in fact defined in the last sentence of the first full paragraph of the 1996 version of the statute. 625 ILCS 5/15–111(a) (West 1996). In 1998, the definition was moved and now appears in section 1–105.6 of the Code (625 ILCS 5/1–105.6 (West 1998)) with other general definitions. The definitions of “gross weight” (625 ILCS 5/1–125 (West 1998)) and “tandem axles” (625 ILCS 5/1–204.3 (West 1998)) also appear in that part of the Code. The term “wheel load,” while not specifically defined, is in fact addressed in the third sentence of section 15–111(a) (625 ILCS 5/15–111(a) (West 1998)).

 Finally, the term “allowable load” is used immediately preceding the table of subsection (f). Read in context, there can be no ambiguity in its meaning. The circuit court suggested the term might refer to the load, or weight of cargo, the vehicle is carrying, or the load of vehicle 
and 
cargo on the road surface. Clearly, the term is used in the statute synonymously with “gross weight.” The last sentence of the first paragraph of subsection (f) prohibits weights in excess of 20,000 pounds on any one axle or 34,000 pounds on any tandem axle, then proceeds to prohibit “a gross weight in excess of 80,000 pounds for vehicle combinations of 5 axles or more, or a gross weight on a group of 2 or more consecutive axles in excess of that weight produced by the application of the following formula.” The algebraic “bridge” formula follows. Then, immediately preceding the table expressing the formula, the statute provides, “The above formula when expressed in tabular form results in 
allowable loads
 as follows.” (Emphasis added.) The formula, which expresses permissible “gross weights,” applicable to any set of consecutive axles on the vehicle, also expresses “allowable loads” for those consecutive axles. The terms are used in this context interchangeably. For another example, we note that the maximum “gross weight” of 80,000 pounds, referenced in text, appears as the “maximum [allowable] load” of 80,000 pounds in three different columns of the table.

We need not conduct an analysis of every term in the statute. As noted previously, we are only concerned here that the statute provided due notice to 
these 
defendants, giving them fair warning of what is prohibited, and explicit standards for those engaged in enforcement. The statute clearly passes that test.

Subsection (f) of section 15–111 applies by its terms to “the National System of Interstate and Defense Highways and other highways in the system of State highways that have been designated by the Department as Class I, II, or III.” 625 ILCS 5/15–111(f) (West 1998). U.S. Route 20, through Jo Daviess County, has been designated a Class II highway. Thus, the weight restrictions of subsection (f) apply to defendants, all of whom were traveling that highway when they were stopped and ticketed.

Although two of the charges– those against defendants Maiers and Scott–were designated as “bridge” violations, and the remaining tickets were written as “gross” weight violations, all of the charges were alleged as infractions of section 15–111(f) of the Code. In a sense, all charge “bridge” violations because they allege excessive weight, or load, over an area spanning certain consecutive axles. If the extreme axles on a vehicle, front and rear, are being considered, and the total weight or load exceeds allowable limits, a gross weight violation has occurred in the traditional sense. If, on the other hand, excessive weight or load exists over consecutive inner axles, then what is apparently referred to as an “inner bridge” violation has occurred. These semantic differences are not important for present purposes.

The table in subsection (f) of section 15–111 sets forth allowable loads or weights which may be “carried on any *** group of 2 or more consecutive axles,” as calculated against the “distance measured to the nearest foot between extremes of any group of 2 or more consecutive axles.” 625 ILCS 5/15–111(f) (West 1998). Regardless of how the violation was designated on the ticket, “gross” or “bridge,” it appears that the officer in each instance totaled the weight of all axles, in essence taking into consideration the weight between the vehicle’s extreme axles, measured the distance between those axles, and applied the relevant figures in the table to determine if the vehicle was overweight, taking into account the statute’s admonishment that the table should be applied to a single vehicle with more than four axles as if it were a four-axle vehicle. 625 ILCS 5/15–111(f) (West 1998).

Thus, pursuant to the table as applied, a vehicle such as the five-axle tanker truck at issue in five of these six cases, which was not a combination and which measured 26 feet between extreme axles, should have been allowed a weight or “load in pounds” of 59,500. That is the figure which was in fact applied to the vehicle in each case. The truck defendant Scott was driving allegedly measured 28 feet between axles and weighed 72,060 pounds. According to the table, the allowable load would have been 60,500 pounds. Thus, defendant Scott is charged with exceeding the allowable load by 11,560 pounds.

We find that the statute is not vague as applied to these defendants. A person of ordinary intelligence has a reasonable opportunity to know what is prohibited. Nor does the statute lend itself to arbitrary enforcement by the police. The statute provides clear standards for enforcement. The statute, as applied, violates no constitutional principles.

For the reasons stated, the judgment of the circuit court of Jo Daviess County is reversed and the cause is remanded to that court for further proceedings.

Reversed and remanded.

JUSTICE HEIPLE, dissenting:

This consolidated group of cases concerns the prosecution of defendants for driving overweight trucks in violation of Illinois statute. 625 ILCS 5/15–111 (West 1998). All but one of the six cases involves the same truck. That truck was a milk-hauling truck based in the State of Iowa which picks up raw milk from dairy farmers in Jo Daviess County, Illinois, and transports it to Iowa for processing.

The issue in this case is whether the statute in question is vague and indecipherable by a person of ordinary intelligence and thus unconstitutional. The trial judge, Judge Sprengelmeyer, ruled that such was the case. On appeal to our court, the majority opines that the statute, though unclear to Judge Sprengelmeyer, should be clear to a person of ordinary intelligence. With that, I respectfully disagree. So that other people of ordinary intelligence can form their own opinions, I publish that statute as an appendix to this dissent. This tortuous creation of the legislature goes on for several pages without respite save such as may be afforded by algebraic formulae and cryptic tables.

Certainly, as Judge Sprengelmeyer pointed out in his trial court opinion, no one questions the legitimacy of regulating truck weights on highways. The problem with vagueness in a statute, however, is that it subjects citizens to selective prosecution at the whim of the police and prosecutors. Citizens are entitled to fair warning of what is prohibited. 
Grayned v. City of Rockford
, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972).

Directing his attention to the language of the statute, Judge Sprengelmeyer’s opinion stated:

“Turning to analysis of the language of the statute itself, there are several significant and substantial problems immediately apparent. There is the sheer volume of it. *** There is not a consistent use of defined terms. There is use of a variety of terms without definition, most of which are terms beyond ordinary understanding ***. There is reference to at least one algebraic formula, and there are two ‘tabular form’ charts purporting to specify weight limitations under certain circumstances. The text is replete with exceptions and ‘provided thats’, such that no reading of the whole or any part of this section can leave a reasonable person with any single conclusion that ‘At least this much is true:...’ ”

“The testimony from all witnesses from both cases for which there has been trial better illustrates the hopeless confusion this language generates than any adjectives this Court could apply. *** While the confusion of this Defendant, these police and these attorneys, and at least this one Judge are certainly not determinative of important Constitutional questions, the record here demonstrates that people of ordinary intelligence and common understanding have no reasonable opportunity to appreciate in advance what is prohibited by this text. The statute does not provide fair warning.”

“Can the statute be deemed to be infirm in 
all
 of its applications to meet the test from [
Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.
, 455 U.S. 489, 71 L. Ed. 2d 362, 102 S. Ct. 1186 (1982)], since a First Amendment activity is not involved? Again, the record of these cases leads to a positive response.”

“In the first instance, it appears the charging officer has at least three choices of the manner or method by which the weight of the supposedly offending vehicle is to be computed: ‘axle’, ‘gross’, or ‘bridge’. This can be gleaned from the statute language, and is reflected most clearly in the format of the ‘Overweight Ticket and Complaint’ used in each of these prosecutions by the Illinois State Police. The officer simply checks one of the three boxes on the face of the complaint.”

“From the statute language itself and from the records of these cases, we can conclude with a fair degree of certainty that the ‘axle’ method means that each wheel connected to a separate axle on the vehicle is to be weighed separately. Likewise, one may fairly conclude the ‘gross’ method means the entire vehicle, including the pay load or cargo, is to be weighed. (Whether the driver and any other occupants of the cab of the vehicle count in this gross weight is not so clear.) The third or ‘bridge’ method is a particular mystery, and what this method is simply cannot be determined by either reading the statute or from the confusing testimony set out in both of these trials. Some suggest it is a method by which the formula from the statute is applied (W equals 500 times the sum of (LN divided by N - 1) + 2 N + 36). (625 ILCS 5/15–111(f).) The statute, subsection (g) speaks of separate limitations for ‘... a bridge or other elevated structure....’ on which the vehicle is being operated. Yet others discuss the weight of a vehicle as distributed across the ‘bridge’ of axles on the vehicle, or some other parts of the structure of the vehicle itself. It seems to this court that no one really knows what the ‘bridge’ charge is, or how it is to be computed, but the important and significant fact of all this is that the selection of the method or formula to be used admittedly yields different results!”

While the majority opinion chides Judge Sprengelmeyer for his discussion of the problem, its own analysis adds no light to the understanding of the statute. The statute speaks for itself. In respect of those separate analyses, I agree with Judge Sprengelmeyer. Accordingly, I respectfully dissent.

APPENDIX

§ 15–111. Wheel and axle loads and gross weights.

(a) No vehicle or combination of vehicles equipped with pneumatic tires shall be operated, unladen or with load, upon the highways of this State when the gross weight on the road surface through any single axle thereof exceeds 18,000 pounds, except when a different limit is established and posted in accordance with Section 15-316 and except any single axle of a 2 axle motor vehicle weighing 36,000 pounds or less and not a part of a combination of vehicles, shall not exceed 20,000 pounds. Provided, however, that any single axle of a 2 axle motor vehicle equipped with a personnel lift or digger derrick, weighing 36,000 pounds or less, owned and operated by a public utility, shall not exceed 20,000 pounds. No vehicle or combination of vehicles equipped with other than pneumatic tires shall be operated, unladen or with load, upon the highways of this State when the gross weight on the road surface through any wheel thereof exceeds 800 pounds per inch width of tire tread or when the gross weight on the road surface through any axle thereof exceeds 16,000 pounds. The gross weight transmitted to the road surface through tandem axles shall not exceed 32,000 pounds and no axle of the series shall exceed the maximum weight permitted under this Section for a single axle. Provided that on a 4 axle vehicle or on a 5 or more axle combination of vehicles the weight on a series of 3 axles whose centers are more than 96 inches apart, measured between extreme axles in the series, shall not exceed those allowed on 3 axles in the table contained in subsection (f) of this Section and no axle or tandem axle of the series shall exceed the maximum weight permitted under this Section for a single or tandem axle. Provided also that a 3 axle vehicle or 3 axle truck mixer registered as a Special Hauling Vehicle, used exclusively for the mixing and transportation of concrete, specially equipped with a road surface engaging mixer trailing 4th axle, manufactured prior to or in the model year of 2004 and first registered in Illinois prior to January 1, 2005, with a distance greater than 72 inches but not more than 96 inches between any series of 2 axles may transmit to the road surface a maximum weight of 18,000 pounds on each of these axles with a gross weight on these 2 axles not to exceed 36,000 pounds. Any such vehicle manufactured in the model year of 2004 or thereafter or first registered in Illinois after December 31, 2004 may transmit to the road surface a maximum of 32,000 pounds through these 2 axles and none of the axles shall exceed 18,000 pounds.

A truck, not in combination and specially equipped with a selfcompactor, or an industrial roll-off hoist and roll-off container, used exclusively for garbage or refuse operations, and a truck used exclusively for the collection of rendering materials may, however, when laden, transmit upon the road surface of any highway except when part of the National System of Interstate and Defense Highways, a gross weight upon a single axle not more than 22,000 pounds, and upon a tandem axle not more than 40,000 pounds. When unladen, however, those trucks shall comply with the axle limitations applicable to all other trucks.

A 2 axle truck specially equipped with a front loading compactor used exclusively for garbage, refuse, or recycling may transmit 20,000 pounds per axle provided that the gross weight of the vehicle does not exceed 40,000 pounds.

(b) The gross weight of vehicles and combination of vehicles including the weight of the vehicle or combination and its maximum load shall be subject to the foregoing limitations and further shall not exceed the following gross weights dependent upon the number of axles and distance between extreme axles of the vehicle or combination measured longitudinally to the nearest foot.

VEHICLES HAVING 2 AXLES............36,000 pounds

VEHICLES OR COMBINATIONS HAVING 3 AXLES

With Tandem Axles

With or Without Tandem Axles

Minimum distance to nearest foot between extreme axles

Maximum Gross Weight (pounds)

Minimum distance to nearest foot between extreme axles

Maximum Gross Weight (pounds)

10 feet

41,000

16 feet

46,000

11

42,000

17

47,000

12

43,000

18

47,500

13

44,000

19

48,000

14

44,500

20

49,000

15

45,000

21 feet or more

50,000

VEHICLES OR COMBINATIONS HAVING 4 AXLES

Minimum distance to nearest foot between extreme axles

Maximum Gross Weight (pounds)

Minimum distance to nearest foot between extreme axles

Maximum Gross Weight (pounds)

15 feet

50,000

26 feet

57,500

16

50,500

27

58,000

17

51,500

28

58,500

18

52,000

29

59,500

19

52,500

30

60,000

20

53,500

31

60,500

21

54,000

32

61,500

22

54,500

33

62,000

23

55,500

34

62,500

24

56,000

35

63,500

25

56,500

36 feet or more

64,000

In applying the above table to a vehicle having more than 4 axles that is not in combination, only 4 axles shall be considered in determining the maximum gross weights.

COMBINATIONS HAVING 5 OR MORE AXLES

Minimum distance to nearest foot between extreme axles

Maximum Gross Weight (pounds)

42 feet or less

72,000

43

73,000

44 feet or more

73,280

VEHICLES OPERATING ON CRAWLER 

TYPE TRACKS 40,000 pounds

TRUCKS EQUIPPED WITH SELFCOMPACTORS OR ROLL-OFF HOISTS AND ROLL-OFF CONTAINERS FOR GARBAGE OR REFUSE HAULS ONLY AND TRUCKS USED FOR THE COLLECTION OF RENDERING MATERIALS

On Highway Not Part of National System of Interstate and Defense Highways

with 2 axles 36,000 pounds

with 3 axles 54,000 pounds

TWO AXLE TRUCKS EQUIPPED WITH A FRONT LOADING COMPACTOR USED EXCLUSIVELY FOR THE COLLECTION OF GARBAGE, REFUSE, OR RECYCLING

with 2 axles 40,000 pounds

(c) Cities having a population of more than 50,000 may permit by ordinance axle loads on 2 axle motor vehicles 33½% above those provided for herein, but the increase shall not become effective until the city has officially notified the Department of the passage of the ordinance and shall not apply to those vehicles when outside of the limits of the city, nor shall the gross weight of any 2 axle motor vehicle operating over any street of the city exceed 40,000 pounds.

(d) Weight limitations shall not apply to vehicles (including loads) operated by a public utility when transporting equipment required for emergency repair of public utility facilities or properties or water wells.

A combination of vehicles, including a tow truck and a disabled vehicle or disabled combination of vehicles, that exceeds the weight restriction imposed by this Code, may be operated on a public highway in this State provided that neither the disabled vehicle nor any vehicle being towed nor the tow truck itself shall exceed the weight limitations permitted under this Chapter. During the towing operation, neither the tow truck nor the vehicle combination shall exceed the following axle weight limitations:

A. 24,000 pounds–Single rear axle;

B. 44,000 pounds–Tandem rear axle;

Gross weight limits shall not apply to the combination of the tow truck and vehicles being towed. The tow truck license plate must cover the operating empty weight of the tow truck only. The weight of each vehicle being towed shall be covered by a valid license plate issued to the owner or operator of the vehicle being towed and displayed on that vehicle. If no valid plate issued to the owner or operator of that vehicle is displayed on that vehicle, or the plate displayed on that vehicle does not cover the weight of the vehicle, the weight of the vehicle shall be covered by the third tow truck plate issued to the owner or operator of the tow truck and temporarily affixed to the vehicle being towed. In addition, the following conditions must be met:

(1) the towing vehicle must be:

a. specifically designed as a tow truck having a gross vehicle weight rating of at least 18,000 lbs. and equipped with air brakes provided that air brakes shall be required only if the towing vehicle is towing a vehicle, semitrailer, or tractor-trailer combination that is equipped with airbrakes;

b. equipped with flashing, rotating or oscillating amber lights, visible for at least 500 feet in all directions; and

c. capable of utilizing the lighting and braking systems of the disabled vehicle or combination of vehicles.

(2) The towing of the vehicles on the highways of this State shall not exceed 20 miles from the initial point of wreck or disablement. Any additional movement of the vehicles shall only occur upon issuance of authorization for that movement under the provisions of Sections 15–301 through 15–319 of this Chapter.

The Department may by rule or regulation prescribe additional requirements. However, nothing in this Code shall prohibit a tow truck under instructions of a police officer from legally clearing a disabled vehicle, that may be in violation of weight limitations of this Chapter, from the roadway to the berm or shoulder of the highway.

For the purpose of this subsection, gross vehicle weight rating, or GVWR, shall mean the value specified by the manufacturer as the loaded weight of the tow truck.

(e) No vehicle or combination of vehicles equipped with pneumatic tires shall be operated, unladen or with load, upon the highways of this State in violation of the provisions of any permit issued under the provisions of Sections 15–301 through 15–319 of this Chapter.

(f) Notwithstanding any other provision in this Code, except for those provisions of subsection (d) of this Section relating to emergency operations of public utilities and tow trucks while actually engaged in the towing of a disabled vehicle, and those vehicles for which the Department issues overweight permits under authority of Section 15–301 of this Code, the weight limitations contained in this subsection shall apply to the National System of Interstate and Defense Highways and other highways in the system of State highways that have been designated by the Department as Class I, II, or III. No vehicle shall be operated on the highways with a weight in excess of 20,000 pounds carried on any one axle or with a tandem axle weight in excess of 34,000 pounds, or a gross weight in excess of 80,000 pounds for vehicle combinations of 5 axles or more, or a gross weight on a group of 2 or more consecutive axles in excess of that weight produced by the application of the following formula:

W = 500 times the sum of (LN divided by N-1) + 2N +36

Where “W” equals overall gross weight on any group of 2 or more consecutive axles to the nearest 500 pounds; “L” equals the distance measured to the nearest foot between extremes of any group of 2 or more consecutive axles; and “N” equals the number of axles in the group under consideration, except that 2 consecutive sets of tandem axles may carry a gross load of 34,000 pounds each, provided the overall distance between the first and last axles of the consecutive sets of tandem axles is 36 feet or more. Provided also that a 3-axle vehicle registered as a Special Hauling Vehicle manufactured prior to or in the model year of 2004, and first registered in Illinois prior to January 1, 2005, with a distance greater than 72 inches but not more than 96 inches between the 2 rear axles may transmit to the road surface a maximum weight of 18,000 pounds on each of the 2 rear axles with a gross weight on these 2 axles not to exceed 36,000 pounds. Any vehicle registered as a Special Hauling Vehicle manufactured prior to or in the model year of 2004 or thereafter or first registered in Illinois after December 31, 2004, may transmit to the road surface a maximum of 34,000 pounds through the 2 rear axles and neither of the rear axles shall exceed 20,000 pounds.

The above formula when expressed in tabular form results in allowable loads as follows:

Distance measured to the nearest foot between the extremes of any group of 2 or more consecutive axles

Maximum load in pounds carried on any group of 2 or more consecutive axles

feet

2 axles

3 axles

4 axles

5 axles

6 axles

4

34,000

5

34,000

6

34,000

7

34,000

8

38,000*

42,000

9

39,000

42,500

10

40,000

43,500

11

44,000

12

45,000

50,000

13

45,000

50,500

14

46,500

51,500

15

47,000

52,000

16

48,000

52,500

58,000

17

48,500

53,500

58,500

18

49,500

54,000

59,000

19

50,000

54,500

60,000

20

51,000

55,500

60,500

66,000

21

51,500

56,000

61,000

66,500

22

52,500

56,500

61,500

67,000

23

53,000

57,500

62,500

68,000

24

54,000

58,000

63,000

68,500

25

54,500

58,500

63,500

69,000

26

55,500

59,500

64,000

69,500

27

56,000

60,000

65,000

70,000

28

57,000

60,500

65,500

71,000

29

57,500

61,500

66,000

71,500

30

58,500

62,000

66,500

72,000

31

59,000

62,500

67,500

72,500

32

60,000

63,500

68,000

73,000

33

64,000

68,500

74,000

34

64,500

69,000

74,500

35

65,500

70,000

75,000

36

66,000

70,500

75,500

37

66,500

71,000

76,000

38

67,500

72,000

77,000

39

68,000

72,500

77,500

40

68,500

73,000

78,000

41

69,500

73,500

78,500

42

70,000

74,000

79,000

43

70,500

75,000

80,000

44

71,500

75,500

45

72,000

76,000

46

72,500

76,500

47

73,500

77,500

48

74,000

78,000

49

74,500

78,500

50

75,500

79,000

51

76,000

80,000

52

76,500

53

77,500

54

78,000

55

78,500

56

79,500

57

80,000

* If the distance between 2 axles is 96 inches or less, the 2 axles are tandem axles and the maximum load permitted is 34,000 pounds, notwithstanding the higher limit resulting from the application of the formula.

In applying the above formula to a vehicle having more than 4 axles that is not a combination, only 4 axles shall be considered in determining the maximum gross weight, and for a combination of vehicles having more than 6 axles, only 6 axles shall be considered in determining the maximum gross weight.

Notwithstanding the above table, 2 consecutive sets of tandem axles may carry a gross weight of 34,000 pounds each if the overall distance between the first and last axles of the consecutive sets of tandem axles is 36 feet or more.

Local authorities and road district highway commissioners, with respect to streets and highways under their jurisdiction, without additional fees, may also by ordinance or resolution allow the weight limitations of this subsection, provided the maximum gross weight on any one axle shall not exceed 20,000 pounds and the maximum gross weight on any tandem axle shall not exceed 34,000 pounds, on designated highways when appropriate regulatory signs giving notice are erected upon the street or highway or portion of any street or highway affected by the ordinance or resolution.

Combinations of vehicles, registered as Special Hauling Vehicles that include a semitrailer manufactured prior to or in the model year of 2004, and first registered in Illinois prior to January 1, 2005, having 5 axles with a distance of 42 feet or less between extreme axles shall be limited to the weights prescribed in subsections (a) and (b) of this Section and not subject to the bridge formula on the National System of Interstate and Defense Highways and other highways in the system of State highways designated bv the Department. For all those combinations of vehicles, that include a semitrailer manufactured after the effective date of this amendatory Act of 1986, the overall distance between the first and last axles of the 2 sets of tandems must be 18 feet 6 inches or more. All combinations of vehicles registered as Special Hauling Vehicles that include a semitrailer manufactured prior to or in the model year of 2004 or thereafter or first registered in Illinois after December 31, 2004, or that has had its cargo container replaced in its entirety after December 31, 2004, are limited to the gross weight allowed by the above formula.

A truck not in combination, equipped with a self compactor or an industrial roll-off hoist and roll-off container, used exclusively for garbage or refuse operations, shall be allowed the weights as prescribed in subsections (a) and (b) of this Section and not subject to the bridge formula, provided they are not operated on a highway that is part of the Interstate and Defense Highway System.

Vehicles operating under this subsection shall have access for a distance of one highway mile to or from a Class I highway on any street or highway, unless there is a sign prohibiting the access, or 5 highway miles to or from either a Class I, II, or III highway on a street or highway included in the system of State highways and upon any street or highway designated by local authorities or road district commissioner to points of loading and unloading and to facilities for food, fuel, repairs and rest.

Section 5–35 of the Illinois Administrative Procedure Act relating to procedures for rulemaking shall not apply to the designation of highways under this subsection.

(g) No person shall operate a vehicle or combination of vehicles over a bridge or other elevated structure constituting part of a highway with a gross weight that is greater than the maximum weight permitted by the Department, when the structure is sign posted as provided in this Section.

(h) The Department upon request from any local authority shall, or upon its own initiative may, conduct an investigation of any bridge or other elevated structure constituting a part of a highway, and if it finds that the structure cannot with safety to itself withstand the weight of vehicles otherwise permissible under this Code the Department shall determine and declare the maximum weight of vehicles that the structures can withstand, and shall cause or permit suitable signs stating maximum weight to be erected and maintained before each end of the structure. No person shall operate a vehicle or combination of vehicles over any structure with a gross weight that is greater than the posted maximum weight.

(i) Upon the trial of any person charged with a violation of subsections (g) or (h) of this Section, proof of the determination of the maximum allowable weight by the Department and the existence of the signs, constitutes conclusive evidence of the maximum weight that can be maintained with safety to the bridge or structure.