(No. 66570.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARGARET JIHAN, Appellee.

*Opinion filed March 29, 1989.*

380

WARD and CALVO, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and John R. Clemons, State's Attorney, of Murphysboro (Robert Ruiz, Solicitor General, and Terence M. Madsen and Michael J. Singer, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, Stephen E. Norris and Ellen Eder Irish, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Howard B. Eisenberg, of Carbondale, for appellee.

Penney L. Fillmer, of West Chicago, and Linda Irene-greene, for *amici curiae* Midwives Alliance of North America and Illinois Alliance of Midwives.

JUSTICE CLARK delivered the opinion of the court:

The question presented by this appeal is whether provisions of the now repealed Illinois Medical Practice Act (the Act) (Ill. Rev. Stat. 1985, ch. 111, par. 4401 *et seq.*), which prohibited the unlicensed practice of midwifery, were unconstitutionally vague under the due process clauses of the United States and Illinois Constitutions.

In 1986, appellee, Margaret Jihan, was convicted of practicing midwifery without a license in violation of the Act (the Act was not repealed until December 31, 1987) for the role she played in assisting Hanizah Hashim in the delivery of her baby. The only witness who testified at the trial was a Carbondale police officer to whom appellee had given a statement describing what had occurred at the birthing. The officer testified that, according to appellee, Hashim had originally planned on delivering her baby at a birthing center. However, when it became apparent that the center would not open in time for the birth, her doctor recommended that she contact appellee to assist her in delivering the baby at home. Hashim and her husband met appellee for the first time six to eight weeks before the birth. The purpose of the meeting "was for education and awareness of child birthing at home."

On May 16, 1985, Hashim telephoned appellee and told her that "her bag of waters had broke." Appellee then advised her of various methods of inducing labor including breast stimulation, long walks and hot showers. Appellee saw Hashim that day and again on May 17, when she spent most of the day and night at Hashim's apartment. During these visits, appellee observed the

progress of Hashim's labor and monitored the child's heartbeat. Hashim's active labor began on the morning of May 18.

At about 7 o'clock on the evening of May 18, Hashim passed a bloody discharge in which meconium was present. Meconium is a fecal material which a fetus can ingest into its lungs, causing blocked airways. Meconium must be removed immediately after childbirth to allow the baby to breathe normally. The presence of the meconium indicated to appellee that a special delivery of the baby would be necessary, one that would require extensive suctioning of the baby to remove the meconium and possibly even resuscitation to revive the baby's breathing. Appellee suggested at this point that Hashim go to the hospital, but Hashim wanted to stay at home. Consequently, appellee continued to monitor Hashim, conducted an internal exam with a sterile glove, determined that Hashim was dilated eight centimeters, and checked the baby's heartbeat every 15 minutes with a stethoscope.

At about 10 o'clock that evening, Hashim began to deliver her baby. The baby's head was delivered first, and appellee saw meconium present and so wiped the baby's face and began suctioning the baby's nose with a rubber ball syringe. After the remainder of the baby was delivered, appellee continued suctioning and removing the meconium, began to massage the baby, placed the baby on top of the mother, and clamped and cut the umbilical cord. The baby had failed to breathe after birth. Appellee then instructed an assistant who was also present at the delivery to begin massaging Hashim's abdomen. Appellee also told the assistant to call an ambulance while appellee took the baby into the bathroom of the apartment and turned on the hot water to create steam. When the baby became unresponsive, appellee began administering cardiovascular pulmonary resuscita-

tion, but could not get oxygen into the baby's lungs. Appellee then wrapped the baby in sterile blankets and took it out of the bathroom. Appellee then began massaging Hashim's abdomen because the assistant had failed to do so. When the ambulance arrived, appellee took the baby out to the ambulance crew and gave them a brief history of the birth. Appellee then returned to Hashim and continued massaging her abdomen. Seeing that the placenta had attached itself, thus requiring an emergency procedure, appellee called for another ambulance. While waiting for the ambulance to arrive, appellee assisted Hashim with her breathing and gave her a glass of cold tea with honey. The baby was taken by ambulance to a hospital, where it was pronounced dead on arrival.

In her statement to the police officer, appellee described herself as a "labor-coach and patient advocate." She explained that she charges two to five dollars per hour for her attendance at births. She also gave the officer a "Release" that she had Hashim and her husband sign. The release said, in part:

> "We initiated the relationship with [appellee] and asked her to be present at the birth of our child as a midwife. We are fully aware that she is not a doctor or a nurse, and has no medical or nursing training, and agree that she is not representing that she can or will perform any tasks which require such training. We understand that her experiences are limited to having given birth three times herself and having attended a few other births as a lay midwife or as an assistant to a doctor.
>
> We further realize that [appellee] does not have a license as a midwife, and that Illinois does not license midwives. We understand that [appellee] does not hold herself out to the public as a midwife, but is only agreeing to attend our birth because she feels she could be of help to us."

Appellee was charged by indictment with involuntary manslaughter and practicing midwifery without a license. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3; Ill. Rev. Stat. 1985, ch. 111, pars. 4460, 4464.) The circuit court dismissed the manslaughter charge but convicted appellee of practicing midwifery without a license. Appellee was sentenced to one year of probation and, as a condition of probation, was ordered to serve six months of "electronic home confinement" from 10 p.m. until noon six days per week.

Appellee appealed the conviction to the appellate court, claiming that the statute under which she was convicted was unconstitutionally vague because the term "midwifery" was not defined. The appellate court agreed and reversed the conviction. (165 Ill. App. 3d 507.) We granted the State's petition for leave to appeal. (107 Ill. 2d R. 315.) We also granted the Midwives Alliance of North America and the Illinois Alliance of Midwives leave to file an *amicus curiae* brief in support of appellee's position.

The Medical Practice Act prohibited any person from the "practice *** [of] midwifery" without a State license to do so. (Ill. Rev. Stat. 1985, ch. 111, par. 4403.) A person who "practice[d] midwifery" without a license was guilty of a Class 4 felony. (Ill. Rev. Stat. 1985, ch. 111, pars. 4460, 4464, 4471.) The terms "practice" and "midwifery" were not defined in the Act.

Appellee claims that the undefined term "midwifery" was vague and so contends that we should affirm the appellate court's decision that the statute was unconstitutional. The State, on the other hand, argues that appellee does not have standing to raise a vagueness challenge because appellee's conduct was clearly prohibited by the Act. The State further argues that even if appellee does have standing, the term "midwife" has a

common and ordinary meaning that is easily understood by the average person and so the appellate court's finding that the statute was vague was incorrect.

The due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) require that the proscriptions of a criminal statute be clearly defined and provide " 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " (*People v. Haywood* (1987), 118 Ill. 2d 263, 269, quoting *United States v. Petrillo* (1946), 332 U.S. 1, 8, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1542.) Definiteness is necessary so that "the person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly." (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99.) Definite standards are also required "to avoid arbitrary and discriminatory enforcement and application by police officers, judges and juries." *Haywood*, 118 Ill. 2d at 269.

Initially, we must address the question of appellee's standing. It is well established that " '[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' " (*People v. Ryan* (1987), 117 Ill. 2d 28, 34, quoting *United States v. Mazurie* (1975), 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714.) To prevail in a vagueness challenge to a statute that does not implicate first amendment concerns, a party must demonstrate that the statute was vague as applied to the conduct for which the party is being prosecuted. (*People v. Garrison* (1980), 82 Ill. 2d 444, 454.) That is, the party must show that the statute did not provide clear notice that the party's conduct was prohibited. (*Garrison*, 82 Ill. 2d at 454.) In first amendment cases, on the other hand, a party may argue not only

that a statute is vague as applied to himself, but also that the statute is unconstitutional on its face because it might be vague as applied to someone else. (*Garrison*, 82 Ill. 2d at 454.) The right to challenge a statute as being vague on its face where the statute clearly applies to the conduct of the party making the challenge does not exist unless first amendment concerns are involved. (*Garrison*, 82 Ill. 2d at 454.) In the present case, no first amendment issue is involved and so appellee does not have standing to argue that the statute might be vague as applied to someone else. However, appellee clearly has standing to raise the issue of whether the Act's language was vague as it applied to appellee. Thus, the issue before us is whether the Act clearly proscribed the conduct engaged in by appellee in this case.

The State first claims that appellee clearly practiced midwifery because appellee, as evidenced by the "Release" she had Hashim sign, with its language that appellee would be present at the birth as a "midwife," understood herself to be a midwife. However, the issue here is not, Did appellee think that her conduct constituted midwifery? Rather the question is, Did the Act clearly specify that appellee's conduct was prohibited? To answer this question, we must first ascertain what conduct occurred and then decide if that conduct was clearly prohibited by the language of the Act.

The State lists a series of acts allegedly engaged in by appellee and states that they "certainly" constituted the practice of midwifery. Among the appellee's acts listed by the State were: meeting with Hashim and her husband six to eight weeks prior to the birth to discuss childbirthing at home; having Hashim sign the release; monitoring the baby's heartbeat; conducting an internal exam on Hashim; wiping meconium off of the baby; massaging the baby after delivery; cutting the umbilical cord; massaging Hashim's abdomen; and calling an am-

bulance. The State then argues that the term "midwife" means "the ordinary act of assisting at childbirth" and so appellee's conduct was clearly prohibited by the Act. We disagree, though, because we find that the meaning of the term "midwifery" is not as clear as the State assumes it to be.

The State supports its definition of the term "midwife" by citing four cases from other jurisdictions which define the term "midwife" in the context of their State statutes as being the act of assisting at childbirth. (*Bowland v. Municipal Court* (1976), 18 Cal. 3d 479, 556 P.2d 1081, 134 Cal. Rptr. 630 (*en banc*); *Northrup v. Superior Court* (1987), 192 Cal. App. 3d 276, 237 Cal. Rptr. 255; *Smith v. State ex rel. Medical Licensing Board* (Ind. App. 1984), 459 N.E.2d 401; *State ex rel. Missouri State Board of Registration for the Healing Arts v. Southworth* (Mo. 1986), 704 S.W.2d 219 (*en banc*).) We decline to apply the definitions of midwifery from these cases, however, because they are distinguishable from the present case. The two California cases interpreted the term's meaning based upon a California statute which, unlike the statute in this case, set out in great detail specifically what conduct did not constitute midwifery. (See *Bowland*, 18 Cal. 3d at 485, 556 P.2d at 1083, 134 Cal. Rptr. at 632; *Northrup*, 192 Cal. App. 3d at 278, 237 Cal. Rptr. at 256.) The Missouri and Indiana cases, unlike this case, involved civil rather than criminal proceedings. (See *Smith*, 459 N.E.2d at 403; *Southworth*, 704 S.W.2d at 221.) As the United States Supreme Court stated in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 498-99, 71 L. Ed. 2d 362, 371-72, 102 S. Ct. 1186, 1193, there is a greater tolerance for statutory ambiguity in civil proceedings than in criminal proceedings "because the consequences of imprecision are qualitatively less severe." The Supreme Court's statement in *Hoff-*

*man Estates* is consistent with our own rule of statutory construction that " '[i]f a statute creating or increasing a penalty or punishment be capable of two constructions, undoubtedly that which operates in favor of the accused is to be adopted.' " *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 371, quoting *People v. Lund* (1943), 382 Ill. 213, 215-16.

We find that there is ambiguity in the term "midwifery" and that this ambiguity is demonstrated by the State's argument itself. The indictment in this case read that appellee "committed the offense of practice of midwifery without a license in that she *delivered* the child of Hanizah Hashim, without being licensed to do so in the State of Illinois." (Emphasis added.) Similarly, the State in its reply brief and during oral argument stated that the act of midwifery is the act of delivering a child. Although the meaning of the term "delivery" may be as vague as that of "midwifery," we find that it connotes the playing of a major role in physically removing or extracting a baby from its mother's womb. The term "assisting at childbirth," however, encompasses a far broader range of activity than the mere physical delivery of the baby, and could include everything from educating the mother weeks before the delivery to caring for the mother and child immediately after birth. It is therefore unclear whether the term "midwifery" has the broad meaning of *assisting* at childbirth, as the State contends at times, or if it has the more narrow meaning of actually *delivering* the child at birth.

Clearly, appellee assisted at the birth of Hashim's child. However, there has been no showing that appellee delivered Hashim's child. The trial court based its conviction of appellee upon a finding that appellee assisted in the childbirth. The testimony by the police officer in this case, which was the sole evidence concerning what occurred at the childbirth, does not establish that appel-

lee delivered the child. According to the officer's testimony, appellee told her that she monitored the baby's heartbeat, observed Hashim's labor, conducted an internal exam of Hashim and determined that she was dilated eight centimeters. Appellee also told the officer that a third person, an unnamed assistant, was present at the birth. The officer then testified as follows:

"Q. And did [appellee] state she was present during the delivery of the child?

A. Yes.

Q. What did she say happened?

A. At delivery the baby's head was delivered first, then she saw meconium present and wiped the baby's face and began suctioning the baby's nose. Subsequently, the remainder of the child was born. She continued suctioning the meconium, began to massage the baby, placed the baby on top of the mother, wiped the meconium off the baby's body and subsequently clamped and cut off the umbilical cord on the baby."

This testimony only establishes that appellee monitored, examined and assisted Hashim with her birth and cared for the baby during and after the delivery. It is not clear from the evidence whether appellee actually delivered the child in the sense of physically removing or extracting it from its mother's womb. Because the language of the Act could be read as merely prohibiting persons not licensed as midwives from delivering babies, rather than the State's more broad reading that it prohibits such persons from assisting at birth, and because there is no evidence that appellee delivered Hashim's baby, we conclude that the Act did not clearly prohibit the conduct engaged in by appellee in this case. Accordingly, we find that the Act was unconstitutionally vague as applied to appellee in that it did not provide sufficient notice that appellee's conduct in this case was prohibited.

We note in closing that the Act in question here has been repealed by the General Assembly and replaced by the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 *et seq.*). The new act makes no reference to the practice of midwifery or to midwives, and so our holding here has no effect upon the current statutory scheme which governs the practice of medicine in Illinois.

The judgment of the appellate court in reversing appellee's conviction and holding that sections 25 and 29 of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, pars. 4460, 4464) were unconstitutionally vague as applied to appellee is therefore affirmed.

*Judgment affirmed.*

WARD and CALVO, JJ., took no part in the consideration or decision of this case.