(No. 86463.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KATHY MANESS, Appellee.

*Opinion filed June 15, 2000.*

HARRISON, C.J., joined by MILLER and McMORROW, JJ., dissenting.

James E. Ryan, Attorney General, of Springfield (Joel

D. Bertocchi, Solicitor General, and William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel, and John Carroll, law student), for the People.

Daniel M. Kirwan, Deputy Defender, and Robert S. Burke, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This case involves the constitutionality of section 5.1 of the Wrongs to Children Act (720 ILCS 150/5.1 (West 1992)). We hold that section 5.1 is unconstitutionally vague.

## STATUTE

Section 5.1 of the Wrongs to Children Act (Act) (720 ILCS 150/1 *et seq.* (West 1992)) prohibits the offense of "permitting the sexual abuse of a child." For purposes of this case, section 5.1 provides:

> "A. A parent or step-parent who knowingly allows or permits an act of criminal sexual abuse or criminal sexual assault as defined in Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961,' [720 ILCS 5/12—13, 12—14, 12—15, 12—16 (West 1992)], upon his or her child and fails to take reasonable steps to prevent its commission or future occurrences of such acts commits the offense of permitting the sexual abuse of a child. For purposes of this Section, 'child' means a minor under the age of 17 years.
>
> B. Any person convicted of permitting the sexual abuse of a child shall be guilty of a Class A misdemeanor." 720 ILCS 150/5.1 (West 1992).

Relevant to the facts of this case is the underlying provision of the criminal sexual abuse statute, section 12—15 of the Criminal Code of 1961, which provides that "[t]he accused commits criminal sexual abuse if he or she com-

mits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was less than 5 years older than the victim." 720 ILCS 5/12—15(c) (West 1998). Criminal sexual abuse is a Class A misdemeanor. 720 ILCS 5/12—15(d) (West 1998).

In light of the different versions of section 5.1 that have been in effect, we must as a preliminary matter clarify our reasons for quoting the aforementioned version of the statute. The permitting sexual abuse of a child statute, section 5.1, was amended by Public Act 88—680 to include "legal guardian[ ] or other person having custody of a child" to the list of those subject to the statute, and to add a provision to include within its scope those designated who "knowingly permit[ ], induce[ ], promote[ ], or arrange[ ] for the child to engage in prostitution as defined in Section 11—14 of the Criminal Code of 1961 [720 ILCS 5/11—14 (West 1998)]." See Pub. Act 88—680, art. 50, § 50—10, eff. January 1, 1995. Public Act 88—680 also elevated the offense of permitting sexual abuse of a child from a Class A misdemeanor to a Class 1 felony. Pub. Act 88—680, art. 50, § 50—10, eff. January 1, 1995. Public Act 88—680, however, is void *ab initio* because it was enacted in violation of the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). *People v. Cervantes*, 189 Ill. 2d 80 (1999).

Section 5.1 was also amended by Public Act 89—428 to add the offense of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)) to the list of underlying offenses. See Pub. Act 89—428, art. 2, § 265, eff. December 13, 1995. Public Act 89—428, however, is void *ab initio* because it too was enacted in violation of the single subject rule of the Illinois Constitution. *Johnson v. Edgar*, 176 Ill. 2d 499 (1997). This amendment was later reenacted in Public Act 89—462. See Pub. Act 89—462, art. 2, § 265, eff. May 29, 1996. This amend-

ment is not relevant for purposes of this case. Section 5.1, as set forth above, reflects the version of this statute that is applicable to this case.

## FACTS

On November 19, 1997, defendant, Kathy Maness, was charged in the circuit court of Randolph County with the offense of permitting the sexual abuse of a child. See 720 ILCS 150/5.1 (West 1992). The charging instrument alleged that defendant, the mother of Lynlee Jo Otten, a minor under the age of 17 years, knowingly allowed or permitted Leonard A. Owens, Jr., to commit an act of criminal sexual abuse upon Lynlee, "in that Leonard A. Owens, Jr. committed an act of sexual penetration with Lynlee Jo Otten, who was at least 13 years of age, but under 17 years of age when the act was committed, in that Leonard A. Owens, Jr. placed his penis in the vagina of Lynlee Jo Otten, and Leonard A. Owens, Jr. was less than five years older than Lynlee Jo Otten, and the defendant did fail to take reasonable steps to prevent its commission." Defendant was alleged to have committed this offense in Randolph County, Illinois, where she and Lynlee lived, between the months of January and August of 1997.

Lynlee Otten was born on October 28, 1983. Leonard Owens was born on February 25, 1979. They started dating each other in August 1996, and began having sexual intercourse in December 1996. Between December 1996, and approximately April 1997, when the pair terminated their relationship, Lynlee and Leonard had sexual intercourse 15 to 20 times.

At some point after the sexual relationship began, Lynlee told defendant, her mother, that she and Leonard were having sexual intercourse. Defendant confronted both Lynlee and Leonard about the sexual relationship, expressed her disapproval, and discussed the implications of sexual intercourse.

Defendant obtained birth control pills for Lynlee and allowed Leonard on numerous occasions to spend the night at the family home. Defendant was aware that, on some of these occasions, Leonard slept in Lynlee's bedroom and had sexual intercourse with Lynlee. Defendant was also aware that, during the relevant time period, Leonard was 17 years old, and Lynlee was 13 years old. The record shows that Leonard pled guilty to criminal sexual abuse in connection with the facts of this case. See 720 ILCS 5/12—15 (West 1998).

According to an investigative report from the Department of Children and Family Services (DCFS), defendant stated that she did not know what steps to take to prevent the sexual relationship between Lynlee and Leonard. Defendant further stated that Leonard "was a nice boy and was better than most of the younger boys Lynlee was hanging around with," and that "it was safer for Lynlee to be having sex with [Leonard] at home than [with] somebody else out of the home environment." The DCFS report discloses that defendant "feels she has some control of the daughter's sexual activities if it occurs in the home."

Defendant filed a motion to dismiss the charge, arguing that section 5.1 is unconstitutionally vague as to what constitutes "reasonable steps" to prevent the commission of future acts of sexual abuse. According to defendant, the statute exposes any parent to prosecution if a child "becomes pregnant, sires a child, asks for birth control devices, or seeks any counsel from the teenager's parents regarding sexual activity." Defendant also argued that section 5.1 of the Act, both on its face and as applied in this case, violates defendant's fundamental liberty right to raise her child free from undue state influence as guaranteed by the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution of 1970.

Following a hearing, the circuit court, in a verbal order, granted defendant's motion to dismiss the charge. The transcript of the order reveals that the circuit court found that section 5.1 "may implicate first amendment concerns of the defendant or of a parent or guardian to effectively address the problem of underage teenage sex in their particular family situation." The circuit court also held that section 5.1 is unconstitutionally vague as to what constitutes "reasonable steps" to prevent the commission of future acts of sexual abuse.

The State appealed directly to this court. Because the circuit court declared section 5.1 of the Act unconstitutional on its face, this court has jurisdiction over this appeal pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

## ANALYSIS

We review *de novo* a circuit court's holding with respect to the constitutionality of a statute. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 441 (1998). Statutes carry a strong presumption of constitutionality, and the party challenging the constitutionality of a statute bears the burden of rebutting this presumption. *Russell*, 183 Ill. 2d at 441. Here, that party is defendant, who for the reasons set forth below has met this burden.

A cornerstone of our jurisprudence is that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2. Due process of law requires that the proscriptions of a criminal statute be clearly defined. *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997), *aff'd*, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999). To satisfy the vagueness doctrine, a criminal statute must meet two requirements. First, the statute must provide a person of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct so

that he or she may act accordingly. *Russell*, 183 Ill. 2d at 442; *Morales*, 177 Ill. 2d at 449. " 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' " *Morales*, 177 Ill. 2d at 450, quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 83 L. Ed. 888, 890, 59 S. Ct. 618, 619 (1939). Thus, a statute is unconstitutionally vague "if its terms are so indefinite that 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Fagiano v. Police Board*, 98 Ill. 2d 277, 282 (1983), quoting *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 299-300 (1979).

Second, the statute must adequately define the offense in order to prevent arbitrary and discriminatory enforcement. *Russell*, 183 Ill. 2d at 442; *Morales*, 177 Ill. 2d at 449. The statute must provide explicit standards to regulate the discretion of governmental authorities who apply the law. *Russell*, 183 Ill. 2d at 442; *Morales*, 177 Ill. 2d at 456. If the legislature fails to provide minimal guidelines to govern law enforcement, a criminal law "may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " *Kolender v. Lawson*, 461 U.S. 352, 358, 75 L. Ed. 2d 903, 909, 103 S. Ct. 1855, 1858 (1983), quoting *Smith v. Goguen*, 415 U.S. 566, 575, 39 L. Ed. 2d 605, 613, 94 S. Ct. 1242, 1248 (1974).

Section 5.1 does not satisfy these requirements. To be charged under section 5.1, a parent must knowingly allow or permit an enumerated act of criminal sexual abuse or sexual assault to be committed upon his or her child, and fail to take "reasonable steps" to prevent its commission or future occurrences. 720 ILCS 150/5.1 (West 1992). It is unclear what the "reasonable steps" are that a parent must take in order to comply with the statute. The facts of this case demonstrate this uncer-

tainty. As the record reveals, defendant's 13-year-old daughter confided in defendant that she was having sexual intercourse with her 17-year-old boyfriend. At this point, defendant, as a parent, took steps. She confronted her daughter and her daughter's boyfriend about the sexual relationship, expressed her disapproval, and discussed the implications of sexual intercourse. The statute does not set forth what more the statute commands.

We recognize that defendant obtained birth control pills for her daughter and allowed her daughter's boyfriend to spend the night at the family home. Defendant was aware that at times her daughter and her daughter's boyfriend slept together in her daughter's bedroom and had sexual intercourse with each other. Defendant, however, stated that she did not know what steps to take to prevent the sexual relationship between her daughter and her daughter's boyfriend, and that she felt she had more control over her daughter's sexual activities if they occurred in the home. We are in no position to determine whether defendant's actions constituted "reasonable steps" under the statute. We find that section 5.1 leaves a parent to speculate as to what the statute commands.

Furthermore, section 5.1 risks arbitrary and discriminatory enforcement. As we have discussed, the statute does not set forth standards to regulate what constitute "reasonable steps." There are no guidelines for authorities to follow in evaluating what "reasonable steps" are from case to case. This is certainly not a decision that should be left to the "personal predilections" of the governmental authorities who must apply section 5.1. Section 5.1 enumerates several underlying offenses. Regardless of the underlying offense, it is unclear what a parent must do to take "reasonable steps" under the statute, and authorities remain without standards to guide their enforcement of section 5.1.

We note that, in reviewing whether a statute is vague, a court may also consider the legislative purpose and the evil that the statute is designed to remedy. *People v. R.G.*, 131 Ill. 2d 328, 361 (1989). The legislative history is silent as to the purposes underlying the need for section 5.1. The legislative debates concerning the bill that created the offense of permitting the sexual abuse of a child contain only general references to the name of the offense. We therefore have no information to help define what the statute commands. A person of ordinary intelligence is left to guess at its meaning and disagree as to its application. Due process of law requires that the proscriptions of a criminal statute be clearly defined. Section 5.1 fails to satisfy this requirement.

The dissent states that the "majority has not cited any authority for the proposition that a 'reasonableness' standard renders a criminal statute unconstitutionally vague, and I see no basis for reaching that conclusion with respect to section 5.1." 191 Ill. 2d at 490 (Harrison, C.J., dissenting, joined by Miller and McMorrow, JJ.). The dissent then proceeds to discuss several areas of law where a reasonableness standard is used. We, of course, do not suggest that a reasonableness standard renders a statute unconstitutionally vague. Rather, we hold that the statute at issue in this case, section 5.1, is unconstitutionally vague because it is not clear what the "reasonable steps" are that a parent must take in order to avoid criminal prosecution thereunder.

The dissent further contends that there "are numerous instances in which application of the statute would be proper," and then purports to give an example. 191 Ill. 2d at 490 (Harrison, C.J., dissenting, joined by Miller and McMorrow, JJ.). The dissent's reasoning is flawed. The legal test for whether a statute withstands a vagueness challenge is well settled. To satisfy the vagueness doctrine, a criminal statute must provide both fair warn-

ing of the prohibited conduct and explicit guidelines for those who must apply the law. See, *e.g.*, *Morales*, 177 Ill. 2d at 449. Section 5.1 fails to meet this test. Section 5.1 requires a parent who knowingly allows an enumerated act to be committed upon his or her child to take "reasonable steps" to prevent the commission of the enumerated act. However, it is not clear what the "reasonable steps" are that a parent must take in order to comply with the statute and avoid criminal prosecution. The dissent's answer, that "a mother who gave express permission to one of her adult male friends to have sex with her 12-year-old daughter would clearly fall within the statute's prohibitions" (191 Ill. 2d at 490 (Harrison, C.J., dissenting, joined by Miller and McMorrow, JJ.)), begs the question of what a parent must in fact do in the first instance to comply with section 5.1's requirement of taking "reasonable steps" to prevent the enumerated act. The statute criminally punishes all parents who knowingly permit an enumerated act to occur and fail to take "reasonable steps" to prevent the act. Do "reasonable steps" mean that the parent must call the police, ban the offender from the home, send the child away, speak with the offender? The point is that, regardless of the underlying conduct, section 5.1 leaves a parent to speculate as to what the statute commands.

The dissent also concludes that defendant took "no steps" to prevent the abuse. 191 Ill. 2d at 491 (Harrison, C.J., dissenting, joined by Miller and McMorrow, JJ.). The record reveals otherwise. Defendant confronted her daughter and her daughter's boyfriend about the sexual relationship, expressed her disapproval, and discussed the implications of sexual intercourse. What the dissent really appears to be saying is that defendant did not do enough. However, neither section 5.1, nor the dissent for that matter, specifies what more defendant must have done to avoid criminal prosecution.

## CONCLUSION

We hold that section 5.1 is unconstitutionally vague. We therefore affirm the circuit court's order dismissing the charge against defendant. Consequently, we need not determine whether section 5.1 unconstitutionally infringes upon defendant's fundamental right to raise her child. We also note that, because the offense of permitting the sexual abuse of a child is no longer a Class 1 felony (see *People v. Cervantes*, 189 Ill. 2d 80 (1999)), we need not address defendant's argument raised in this court that applying section 5.1 to her conduct violates the constitutional prohibition against disproportionate penalties.

*Affirmed.*

CHIEF JUSTICE HARRISON, dissenting:

Section 5.1 of the Wrongs to Children Act (720 ILCS 150/5.1 (West 1992)) imposes on parents a duty to take "reasonable steps" to prevent the commission or future occurrence of criminal sexual abuse of their children. Although my colleagues find this standard problematic, I do not believe that it renders the statute unconstitutionally vague. A penal statute comports with due process so long as the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and the statute marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the intent of the legislature. *People v. Hickman*, 163 Ill. 2d 250, 256-57 (1994).

Section 5.1 satisfies these requirements. While the statute does not specifically enumerate what constitute "reasonable steps" to prevent the commission or future occurrence of criminal sexual abuse, it is not alone in this regard. A similar standard has been employed successfully in many other areas of the law. For example,

section 1(D)(m) of the Adoption Act (750 ILCS 50/ 1(D)(m) (West 1998)) provides that where a child has been removed from a parent by the State, the parent's failure to make "reasonable efforts" to correct the conditions that were the basis for removal of the child is grounds for finding the parent unfit. As a matter of common law, hospitals and physicians must take "reasonable steps" to avoid a foreseeable tragedy in their facility. See *Winger v. Franciscan Medical Center*, 299 Ill. App. 3d 364, 375 (1998). Under the Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 1998)), law enforcement officials have a duty to promptly undertake "all reasonable steps" to assist persons protected by the Act. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326 (1995). Tort law dictates that if an accident is reasonably foreseeable, a party is charged with responsibility to take "reasonable steps" to avoid it. See *Cannon v. Commonwealth Edison Co.*, 250 Ill. App. 3d 379, 384-85 (1993).

Whether a party has acted reasonably will necessarily depend on the facts and circumstances of each particular case. What action is reasonable under the circumstances is not always easy to assess. Experience has shown, however, that when dealing with diverse and unpredictable situations, a "reasonableness" standard is the best measure for judging human conduct. Accordingly, the "reasonable man" standard has become a fundamental part of our jurisprudence. We constantly call upon citizens and law enforcement officials to follow and apply this standard. Again, examples are easy to summon. "Reasonableness" plays a pivotal role in assessing the legality of police stops. *People v. Gonzalez*, 184 Ill. 2d 402, 422-24 (1998). It is integral to the law of self-defense (*People v. Morgan*, 187 Ill. 2d 500, 533 (1999)) and the law governing trade secrets (765 ILCS 1065/2(d) (West 1998); *Jackson v. Hammer*, 274 Ill. App. 3d 59, 66-67 (1995)).

The majority has not cited any authority for the proposition that a "reasonableness" standard renders a criminal statute unconstitutionally vague, and I see no basis for reaching that conclusion with respect to section 5.1. Even if one could hypothesize circumstances in which application of the statute would be uncertain, that is not the test. A statute is unconstitutionally vague on its face only if it is incapable of any valid application (*People v. Wawczak*, 109 Ill. 2d 244, 249 (1985)), *i.e.*, where " 'no set of circumstances exists under which the [statute] would be valid.' " *In re C.E.*, 161 Ill. 2d 200, 211 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987).

Section 5.1 is not infirm under this standard. There are numerous instances in which application of the statute would be proper. For example, a mother who gave express permission to one of her adult male friends to have sex with her 12-year-old daughter would clearly fall within the statute's prohibitions.

Because there are valid applications for the statute and because the law does not involve first amendment rights, the determination as to whether the statute is constitutionally infirm must be made in the factual context of this particular case. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 442 (1998). Maness does not have standing to argue that the statute might be vague as applied to someone else. See *People v. Jihan*, 127 Ill. 2d 379, 385 (1989). A defendant may be prosecuted under a statute without violating her due process rights if her conduct clearly falls within the statutory proscription even though the statute may be vague as to other conduct. *People v. Anderson*, 148 Ill. 2d 15, 28 (1992).

What Maness is alleged to have done in this case clearly falls within the prohibitions of section 5.1 of the Wrongs to Children Act. Maness knowingly permitted

Leonard Owens, Jr., a 17-year-old boy, to repeatedly commit criminal sexual abuse of her 13-year-old daughter. Although Maness confronted the couple about their activities, counseled them and expressed her disapproval, the record also shows that she facilitated the criminal sexual abuse by allowing Owens to sleep with her daughter in her daughter's bedroom. When Owens had sex with Maness' daughter, it was usually in the bedroom and usually while Maness and her husband were at home. Maness was aware of this sexual activity and took no steps to stop it. Her view was that if her daughter was going to have sex with Owens, it was safer if she did so at home where Maness had some control.

Maness' contention that she was uncertain as to the law's application is unpersuasive. While persons of ordinary intelligence may sometimes be left to speculate as to what constitute "reasonable steps" to prevent the commission of criminal sexual abuse, this is not one of those situations. Maness is not being prosecuted because of how she counseled her daughter regarding her sexuality or because she obtained birth control medication and prophylactics for her daughter to use. Maness' problem is that the law in Illinois prohibits 17-year-olds from having sex with 13-year-olds, and Maness repeatedly and expressly allowed a 17-year-old to have sex with her daughter in her house. Any person of ordinary intelligence would understand that such conduct constitutes a failure to take "reasonable steps" to prevent criminal sexual abuse within the meaning of the law.

There is likewise no merit to Maness' contention that the statute is invalid because it unduly infringes on a parent's right to raise her child. Under the fourteenth amendment, parents have a "fundamental liberty interest *** in the care, custody, and management of their child[ren,]" with which the government may not interfere unduly. *Santosky v. Kramer*, 455 U.S. 745, 753-54, 71 L.

Ed. 2d 599, 606, 102 S. Ct. 1388, 1394-95 (1982). Parental autonomy, however, is not absolute. See *Lehman v. Stephens*, 148 Ill. App. 3d 538, 547 (1986). In matters concerning child abuse and neglect, a parent's rights yield to the state's interest in protecting its children. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 319 (1996).

The right to be a parent does not encompass the right to abuse one's child or to allow one's child to be abused. If Maness had knowingly allowed Owens to inject her daughter with heroin and provided the couple with a place in her home where the drugs could be injected, there would be no question that Maness could be prosecuted for child endangerment (720 ILCS 5/12—21.6 (West 1998)) or worse, without offending the constitution. The result should not be different because the abuse involves illegal sex rather than illegal drugs.

For the foregoing reasons, the judgment of the circuit court should be reversed and the cause should be remanded for further proceedings. I therefore dissent.

JUSTICES MILLER and McMORROW join in this dissent.