THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SULTAN TAHER, Defendant-Appellant.

First District (5th Division) No. 1—01—0048

Opinion filed May 3, 2002.

1008

Richard M. Goldwasser, of Law Office of Richard M. Goldwasser, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary Boland, and Carrie Strobel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

At the conclusion of a bench trial, the defendant, Sultan Taher, was convicted of domestic battery pursuant to section 12—3.2(a)(2) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12—3.2(a)(2) (West 2000). Defendant was sentenced to 18 months of conditional discharge and 180 days' imprisonment, subject to remittitur. Additionally, defendant was fined $800 and the court extended a previously entered order of protection prohibiting defendant from having contact with his two children during the 18-month period of conditional discharge.

The issues presently before the court are as follows: (1) whether the statute under which defendant was convicted is unconstitutionally vague; (2) whether the statute under which defendant was convicted is unconstitutionally broad; (3) whether defendant was proven guilty beyond a reasonable doubt; and (4) whether the court erred when it entered and continued the order of protection prohibiting defendant from having any contact with his children.

On July 31, 2000, Sabah Taher filed a misdemeanor complaint for domestic battery against her husband, the defendant, Sultan Taher. The complaint alleged that defendant violated section 12—3.2(a)(2) of the Criminal Code when he knowingly, without legal justification, made physical contact of an insulting or provoking nature with his wife. 720 ILCS 5/12—3.2(a)(2) (West 2000).

At trial, Sabah testified that early in the day on July 31, 2000, she had an argument with defendant, during which defendant hit her. Sabah stated that defendant left the house shortly after the argument and that she did not call the police because she was afraid.

Sabah testified that around 5:30 p.m. she was at home with her two young children, who were both asleep. According to Sabah's testimony, she had a headache and decided to lie down in her bedroom. When defendant returned to the house, Sabah stated that he entered their bedroom screaming at her to get him a cup of Pepsi. Sabah testified that she told defendant she had a headache and asked if he could get the Pepsi himself. Sabah stated that defendant then grabbed both of her arms, turned her around, and threw her onto the floor. Sabah testified that she was in great pain when her back hit the floor. Defendant then forced his foot into Sabah's mouth and told her to kiss his foot and get him the Pepsi. Sabah testified that defendant's foot remained in her mouth for a few seconds and that he turned his foot while it was in her mouth. After removing his foot from her mouth, Sabah testified that she remained on the floor for approximately two minutes while defendant called her various degrading names in both English and Arabic.

Sabah testified that when she rose from the floor she tried to call her family, but she could not because defendant had unplugged the phones from the wall and locked them in his briefcase. Further, Sabah stated that she could not leave the house because all of the doors in her house require a key to get either in or out and defendant had locked the house keys in his briefcase. Later in the evening, defendant plugged in the phones and Sabah called her family who, in turn, called the police. Lastly, Sabah testified that she did not go to the emergency room.

Defendant testified that when he came home his family was sleeping. Defendant then stated that he attempted to wake his wife so that she could eat the dinner that he brought home. According to defendant, he stood at the left side of the bed, called his wife's name, and tickled her stomach in an attempt to wake her. Defendant stated that apparently Sabah was still angry from the earlier fight and showed her anger by swinging her right arm across her body, scratching defendant, and then falling out of bed. Defendant testified that Sabah fell about 18 inches from the bed to the ground and that he asked her if she was hurt. In response, defendant stated that his wife called him derogatory names and said "f--- off" at least 10 times. Defendant stated that he did not want the fight to progress further so he left his wife on the ground and walked into the living room.

Defendant denied unplugging the phones and taking the house keys and also stated that Sabah could have left the house at any time. In fact, defendant testified that Sabah began calling him names while she packed her clothes and announced that she was finally going to leave him; however, she remained at home. A few hours after the

fight, defendant stated that he recalled Sabah talking on the phone with her mother for about 45 minutes, then, unexpectedly, the police knocked on the front door.

According to the testimony of Officer Peter Hennessy, who testified on behalf of the defendant, he arrived at defendant's house at approximately 9 p.m. Hennessy stated that when he arrived at the house there was no physical evidence to indicate that there had been a disturbance. Hennessy further testified that he remembered interviewing Sabah and her stating that defendant threw her out of bed and forced his foot into her mouth; however, he noticed no sign of physical injury.

After closing arguments, the trial court found defendant guilty of domestic battery. Defendant then filed a motion to reconsider, which was subsequently denied by the trial court.

At the aggravation stage of the sentencing hearing, the prosecution stated that if Sabah testified she would state that defendant had been abusing her for four years and that previously she never had the courage to call the police. Further, the State informed the trial court that, in violation of the order of protection, defendant's relatives contacted Sabah.

In mitigation, the defense stated that this case involves touching in an insulting manner, rather than bodily harm. Further, defense counsel informed the trial court that defendant does not have any prior convictions. Defense counsel stated that for the past four years defendant has been employed as a respiratory therapist and is currently working at two local hospitals. Defendant pays Sabah $950 per month in support.

At the conclusion of the sentencing hearing, the trial court placed defendant on conditional discharge through May 29, 2002. Defendant was also sentenced to 180 days' incarceration, subject to remittitur, and was fined $800. The trial court required defendant to attend counseling sessions for domestic violence. Lastly, the order of protection was ordered to remain in full force and effect through May 29, 2002. Defendant appeals.

■■ ■ Whether a statute is constitutional is a matter of law, and, therefore, the standard of review is *de novo*. *People v. Fisher*, 184 Ill. 2d 441, 448 (1998). "Statutes carry a strong presumption of constitutionality, and the party challenging the constitutionality of a statute bears the burden of rebutting this presumption." *People v. Maness*, 191 Ill. 2d 478, 483 (2000), citing *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 441 (1998). Section 12—3.2(a) of the Criminal Code defines the offense of domestic battery as follows:

"§ 12—3.2. Domestic Battery.

(a) A person commits domestic battery if he intentionally or knowingly without legal justification by any means:

(1) Causes bodily harm to any family or household member as defined in subsection (3) of Section 112A—3 of the Code of Criminal Procedure of 1963, as amended; [or]

(2) Makes physical contact of an insulting or provoking nature with any family or household member as defined in subsection (3) of Section 112A—3 of the Code of Criminal Procedure of 1963, as amended." 720 ILCS 5/12—3.2(a) (West 2000).

In determining whether this statute is unconstitutionally vague, we must first decide whether the statute at bar encompasses an activity protected by the first amendment. U.S. Const., amend. I. According to the Illinois Supreme Court, a party can attack a penal statute for vagueness only if the provision in question implicates an activity protected by the first amendment. *People v. Ryan*, 117 Ill. 2d 28, 33 (1987); see *Schall v. Martin*, 467 U.S. 253, 268 n.18, 81 L. Ed. 2d 207, 220 n.18, 104 S. Ct. 2403, 2412 n.18 (1984). When a contested statute involves a first amendment right, a party may argue that the statute is vague as applied to himself and that the statute is unconstitutional on its face because it might be vague as applied to someone else. *People v. Jihan*, 127 Ill. 2d 379, 385-86 (1989), citing *People v. Garrison*, 82 Ill. 2d 444, 454 (1980).

If the statute under attack does not involve a first amendment right, it must be examined in light of the facts of the case at hand. *Ryan*, 117 Ill. 2d at 34, quoting *United States v. Mazurie*, 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714 (1975). In other words, "the party must show that the statute did not provide clear notice that the party's conduct was prohibited." *Jihan*, 127 Ill. 2d at 385, citing *Garrison*, 82 Ill. 2d at 454. Moreover, when the statute is examined in light of the facts of the case and the statute clearly applies to the party's conduct, then a challenge of the statute's constitutionality based on vagueness will be unsuccessful. *Ryan*, 117 Ill. 2d at 34, quoting *Parker v. Levy*, 417 U.S. 733, 756, 41 L. Ed. 2d 439, 458, 94 S. Ct. 2547, 2562 (1974).

In *Jihan*, 127 Ill. 2d 379, the defendant was convicted of practicing midwifery without a license in violation of the now-repealed Illinois Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4401 *et seq.*). *Jihan*, 127 Ill. 2d at 384. The appellee appealed her conviction, claiming that the statute under which she was convicted was unconstitutionally vague because the term "midwifery" was not defined. Initially, the supreme court stated that since a first amendment issue was not involved, the appellee did not have standing to argue that the statute might be vague as applied to someone else or that the statute was vague on its face. *Jihan*, 127 Ill. 2d at 384. However, the *Jihan* court found that the appellee had standing to

argue that the statute was vague as it was applied to appellee. *Jihan*, 127 Ill. 2d at 384. Ultimately, the supreme court held that the term "midwifery," as applied to the appellee, was vague because it was unclear whether the term had "the broad meaning of assisting at childbirth" or "the more narrow meaning of actually delivering the child at birth."(Emphasis omitted.) *Jihan*, 127 Ill. 2d at 388. In *Jihan*, the supreme court stated that evidence had been presented that the appellee assisted at the birth; however, there was no showing that the appellee delivered the child. *Jihan*, 127 Ill. 2d at 388. Consequently, the court held that "the Act was unconstitutionally vague as applied to appellee in that it did not provide sufficient notice that appellee's conduct in this case was prohibited." *Jihan*, 127 Ill. 2d at 389.

In *People v. Garrison*, 82 Ill. 2d 444, 446-47 (1980), the defendant was charged with public indecency (Ill. Rev. Stat. 1977, ch. 38, par. 11—9), an activity which is not protected by the first amendment. See 720 ILCS 5/11—9 (West 2000). The specific parts of the provision that the defendant was charged under which he subsequently alleged were unconstitutionally vague provided:

> "(a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:
>
> &#42; &#42; &#42;
>
> (3) A lewd exposure of the body done with the intent to arouse or to satisfy the sexual desire of the person[.]
> &#42;&#42;&#42;
>
> (b) 'Public place' for the purposes of this Section means any place where the conduct may reasonably be excepted to be viewed by others." Ill. Rev. Stat. 1977, ch. 38, par. 11—9.

The defendant in *Garrison* argued that "the statutory definition of 'public place' [was] unconstitutionally vague because the use of the word 'excepted' render[ed] it unintelligible, or alternatively, if 'excepted' is read as 'expected,' because the definition [was] otherwise inadequate." *Garrison*, 82 Ill. 2d at 455. The supreme court reviewed the statute and concluded that the legislature intended to use the word "expected." *Garrison*, 82 Ill. 2d at 455. The supreme court stated that the footnote to the provision indicates that the word "excepted" probably should be read as "expected" and that due to the presence of the footnote the defendant was adequately warned of the intention of the legislature. *Garrison*, 82 Ill. 2d at 455-56.

In *Garrison*, the supreme court held that the statutory definition of "public place" is not unconstitutionally vague. *Garrison*, 82 Ill. 2d at 456. In order for the term "public place" to pass constitutional muster, the supreme court stated that it is not necessary that the

legislature create a list of locations that constitute public places. *Garrison*, 82 Ill. 2d at 456. The court found that the defendant's conduct "occurred in a place that falls squarely within the statutory definition of a 'public place.' " *Garrison*, 82 Ill. 2d at 456. Similarly, the court held that the statutory expression "lewd exposure" is not unconstitutionally vague. *Garrison*, 82 Ill. 2d at 456. "The information charged the defendant with exposing his sex organ, conduct which clearly constitutes a lewd exposure, and he may not pose hypothetical situations in which the statutory standards might conceivably be unconstitutionally vague." *Garrison*, 82 Ill. 2d at 456. The *Garrison* court noted that "[t]he common understanding of expressions like 'lewd exposure' " indicates that the defendant's conduct is prohibited. *Garrison*, 82 Ill. 2d at 456.

■ As demonstrated in *Jihan* and *Garrison*, the supreme court of this state has repeatedly held that due process requires that a criminal statute be clearly defined. *Maness*, 191 Ill. 2d at 483, citing *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997), *aff'd*, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999). "To satisfy the vagueness doctrine, a criminal statute must meet two requirements." *Maness*, 191 Ill. 2d at 483. First, the statute must afford an individual of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct, thereby allowing him to act accordingly. *Maness*, 191 Ill. 2d at 483-84, citing *Russell*, 183 Ill. 2d at 442, and *Morales*, 177 Ill. 2d at 449. In consideration of this requirement, this court has held that a statute is deemed unconstitutionally vague if its terms are so ambiguous that " ' "persons of common intelligence must necessarily guess at its meaning and differ as to its application." ' " *Maness*, 191 Ill. 2d at 484, quoting *Fagiano v. Police Board*, 98 Ill. 2d 277, 282 (1983), quoting *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 299-300 (1979). Second, the statute must define the offense with sufficient specificity in order to prevent arbitrary and discriminatory enforcement of the statute. *Maness*, 191 Ill. 2d at 484, citing *Russell*, 183 Ill. 2d at 442, and *Morales*, 177 Ill. 2d at 449. This requirement helps to regulate the discretion of law enforcement officials who apply the law. *Maness*, 191 Ill. 2d at 484, citing *Russell*, 183 Ill. 2d at 442, and *Morales*, 177 Ill. 2d at 456.

■ Defendant argues that the domestic battery statute involves the relationship between a husband and a wife and, therefore, involves first amendment freedoms. Defendant's argument is unconvincing. The plain language of section 12—3.2(a) indicates that the activity which is the subject of the statute is domestic battery. Domestic battery is not an activity protected by the first amendment. This statute does not infringe on a person's right to enter into an intimate and

private relationship but, rather, prohibits one family member from battering another family member. Since the statute at bar does not involve an activity protected by the first amendment, we must determine whether this statute is unconstitutionally vague in light of the conduct for which defendant was convicted. Furthermore, defendant does not have standing to argue that the statute might be vague as applied to someone else and, therefore, that the statute is unconstitutional on its face.

■ We find that section 12—3.2(a)(2) satisfies the first requirement set forth in *Maness*. Section 12—3.2(a)(2) provides a person of ordinary intelligence with a reasonable opportunity to distinguish between lawful and unlawful conduct so that he or she may act accordingly. More specifically, a person of ordinary intelligence can determine what constitutes "insulting or provoking" physical contact. In the case at bar, defendant's wife testified that defendant grabbed her by the arms, threw her on the floor, and forced his foot into her mouth. Pursuant to the clear language of section 12—3.2(a)(2), a person of ordinary intelligence would undoubtedly conclude that this constitutes physical contact of an insulting or provoking nature. As a result, we find that section 12—3.2(a)(2) provided defendant with sufficient notice that his conduct was prohibited.

■ Next, we find that section 12—3.2(a)(2) satisfies the second requirement set forth in *Maness*. Section 12—3.2(a)(2) adequately defines the offense in order to prevent arbitrary and discriminatory enforcement. The offense is defined as knowing or intentional physical contact which is either "insulting or provoking." The words "insulting" and "provoking" are commonly used words that are neither vague nor difficult for the average person to define. We hold that this definition is adequately specific, thereby preventing the arbitrary and discriminatory enforcement of this provision by the governmental authorities applying this law.

■ Since section 12—3.2(a)(2) provides a person of ordinary intelligence with a reasonable opportunity to distinguish between lawful and unlawful conduct so that he or she may act accordingly and adequately defines the offense in order to prevent arbitrary and discriminatory enforcement, we hold that section 12—3.2(a)(2) is constitutional as applied to defendant. As a result, defendant's conviction is affirmed.

■ Next, we examine whether the statute under which defendant was convicted is unconstitutionally broad. "The doctrine of overbreadth is designed to protect first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of that freedom." *People v.*

*Anderson*, 148 Ill. 2d 15, 26 (1992), citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12, 37 L. Ed. 2d 830, 839-40, 93 S. Ct. 2908, 2915 (1973); *Gooding v. Wilson*, 405 U.S. 518, 521, 31 L. Ed. 2d 408, 413, 92 S. Ct. 1103, 1105 (1972). This court has held that "[a] law regulating conduct is facially overly broad if it (1) criminalizes a substantial amount of protected behavior, relative to the law's plainly legitimate sweep, and (2) is not susceptible to a limiting construction that avoids constitutional problems." *People v. Rokicki*, 307 Ill. App. 3d 645, 652 (1999), citing *City of Harvard v. Gaut*, 277 Ill. App. 3d 1, 6 (1996). This doctrine is to be used sparingly and only in situations where the overbreadth is real and substantial. *Anderson*, 148 Ill. 2d at 26, citing *Broadrick*, 413 U.S. at 615, 37 L. Ed. 2d at 842, 93 S. Ct. at 2918; see also *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191 (1982).

■ In the case at bar, defendant argues that the statute at bar is facially overly broad because it does not allow a husband and wife to interact freely without the fear of criminal prosecution and it does not provide the courts with guidance on how to interpret the terms "insulting" and "provoking." In essence, defendant argues that there are numerous circumstances under which the contact between a husband and wife might be considered insulting or provoking depending on an individual's subjective interpretation of the situation. Defendant further argues that a "substantial amount" of these occurrences would be protected by the first amendment.

Defendant's argument fails because the conduct prohibited by section 12—3.2(a)(2) is not protected by the first amendment. The overbreadth doctrine only applies when first amendment expressive rights are implicated. *Garrison*, 82 Ill. 2d at 451. The statute at bar criminalizes domestic battery defined as intentional or knowing physical contact of an insulting or provoking nature. The conduct prohibited by the legislature is not the type of activity protected by the first amendment. Since the statute at bar does not infringe on a constitutionally protected right, we hold that section 12—3.2(a)(2) is not unconstitutionally broad.

■ The third issue before us is whether defendant was proven guilty beyond a reasonable doubt. "[A] conviction must be based upon proof beyond a reasonable doubt and *** such proof cannot be unconvincing, improbable or contrary to human experience." *People v. Foules*, 258 Ill. App. 3d 645, 653 (1993), citing *People v. Molstad*, 101 Ill. 2d 128 (1984). The duty of the reviewing court is to determine "whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt." *Foules*, 258 Ill.

App. 3d at 653-54, citing *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *People v. Collins*, 106 Ill. 2d 237 (1985). Further, it is the duty of the trier of fact to assess the witness' credibility and weigh the totality of the evidence. *People v. Elam*, 197 Ill. App. 3d 8, 12 (1990).

Pursuant to section 12—3.2(a)(2), to prove a defendant guilty of domestic battery four elements must be proved. Specifically, it must be proved that defendant (1) intentionally or knowingly, (2) without legal justification, (3) made physical contact of an insulting or provoking nature (4) with a family or household member. At trial, the testimony of Sabah, defendant's wife, satisfied each of these four elements. Defendant contends that the testimony of a single witness, Sabah, is not enough to establish his guilt beyond a reasonable doubt. After reviewing Sabah's testimony, we find that the trial court could have concluded from Sabah's testimony alone that defendant is guilty of domestic battery; therefore, defendant's conviction is affirmed.

Lastly, we consider whether the court erred when it entered and continued the order of protection prohibiting defendant from having any contact with his children. In the case at bar, an initial order of protection prohibiting defendant from having contact with his children was entered on August 1, 2000, the day after defendant was arrested. On August 29, 2000, the court extended the order for the duration of the proceedings. At the conclusion of the trial, the court extended the order for an additional 18 months. Thus, defendant was prohibited from having contact with his children until the order of protection expired, which was on May 29, 2002.

Defendant argues that the State never alleged that defendant harmed or threatened his children, and, therefore, the court erred when it extended the order for an additional 18 months. The State contends that the trial court's order should stand because the issue is moot since the domestic relations division granted defendant supervised visitation.

"A case on appeal becomes moot when the issues involved no longer exist because events occurring after the filing of appeal make it impossible for the appellate court to grant effective relief." *Lutz v. Lutz*, 313 Ill. App. 3d 286, 288 (2000). The public interest exception to the mootness doctrine applies when there is a finding of societal interest in protecting future victims of domestic violence, thereby necessitating a decision by the reviewing court. *Lutz*, 313 Ill. App. 3d at 288; see *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784 (1997). This court has stated that the public interest exception should be applied where the matter "clearly involves an important question affecting the public interest which is likely to recur with such frequency that a

decision is necessary to provide further guidance." *In re Marriage of Savas*, 139 Ill. App. 3d 68, 79-80 (1985).

In the case at bar, the domestic relations division entered an order granting defendant supervised visitation; therefore, there is no further relief that this court can effectively grant by reversing the order of protection entered by the trial court. Further, we do not believe that this issue will reoccur with such great frequency that the public interest exception should be applied. For these reasons, we find that the issue of whether the trial court erred when it entered and continued the order of protection is moot.

"To properly preserve an issue for review, '[b]oth a trial objection and a written post-trial motion raising the issue are required.' " (Emphasis omitted.) *People v. Ward*, 154 Ill. 2d 272, 293 (1992), quoting *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). In criminal cases where an error has not been properly preserved, the doctrine of plain error may be involved so long as (1) the evidence is closely balanced, or (2) the error is of such magnitude that the defendant was denied a fair trial. *Ward*, 154 Ill. 2d at 294, citing *People v. Carlson*, 79 Ill. 2d 564, 576-77 (1980).

In the case at bar, the State argues that defendant waived review of this issue since he did not include this issue in his motion for a new trial. We agree with the State and find that this issue has been waived. Furthermore, we find that the plain error doctrine is inapplicable. Sabah's testimony at trial was bolstered by Officer Hennessy's trial testimony. More specifically, Officer Hennessy's testimony showed that Sabah's trial testimony was consistent with the statement she gave to the officer when he arrived at her house. Since Officer Hennessy's testimony bolstered Sabah's credibility more than it did the defendant's, we find that the evidence presented was not so closely balanced that the plain error doctrine should be implemented. Additionally, we do not find that any error occurred which denied defendant a fair trial. Thus, we hold that this issue has been waived.

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.

QUINN and REID, JJ., concur.